RYAN, Respondent, vs. THE ROCKFORD INSURANCE COMPANY, Appellant.

*October 1 — October 14, 1890.*

*Practice: Special verdict: Instructions to jury.*

1. Where particular questions of fact are submitted to the jury, they should not be instructed as to what answers thereto would be consistent, and what inconsistent, with a general verdict in favor of one or the other party.

2. The jury returned a general verdict for the plaintiff and an answer to one of three particular questions submitted. These were accepted and retained by the judge, who thereupon changed the form of one of the unanswered questions and, without giving any further instructions, sent the jury out again to answer those questions. The jury had previously been instructed that an affirmative answer to those questions would be consistent with the general verdict. They returned an affirmative answer to one of the questions and a verbal statement which, on consultation with the judge, was finally agreed upon as the proper answer to the other. These proceedings were had in the absence of defendant's attorney. *Held,* error.

3. Separate parts of a verdict should not be determined and returned at different times.

APPEAL from the Circuit Court for *Dane* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action upon a policy of fire insurance, covering a dwelling-house and barn and the contents, situated upon the premises occupied by the plaintiff in the town of Dunn. The policy was dated June 15, 1888, and contains a provision to the effect that the same would be void unless the plaintiff was the sole and unconditional owner of the premises. The defense say, among other things, that the plaintiff was not such owner. It is conceded that the premises were conveyed to Ellen Ryan, then wife of plaintiff, on April 24, 1884, and that she died September 21, 1884. The plaintiff claims to have proved title in himself by the record of a deed of the premises from Ellen Ryan to himself, dated April 24, 1884, and recorded in the register's office July 13, 1888, but which original deed had been destroyed in the fire. The defense claimed, and gave evidence upon the trial tending to prove, that the blank upon which said deed was written and so recorded contained upon its upper right-hand corner these words, to wit: "M. J. Cantwell, Law-Blank Publisher, Madison, Wis.;" and that no such blanks ever existed until after April, 1887, nearly three years after the death of the grantor named in said deed.

At the close of the testimony, the plaintiff's counsel requested the court to submit to the jury the following question, which, for convenience, is hereby designated "Question A," to wit: "Did Ellen Ryan, on the 24th day of April, 1884, execute a deed to *Phil E. Ryan,* conveying to him the real estate upon which the property insured was situated at the time the policy was issued to him by the *Rockford Insurance Company?*" The court submitted the said question to the jury with the following remarks, to wit: "If you answer that question 'Yes,' it would be in accordance and consistent rather with a general verdict for the plaintiff.

If you answer it ' No,' it would be inconsistent with a general verdict for the plaintiff.   You can see you will answer that question ' Yes ' or ' No.' "   Thereupon the counsel for the defendant asked the court to submit to the jury the following question, to wit: " (1) Did the blank upon which the deed in question, purporting to convey the premises from Ellen Ryan to *Phil E. Ryan*, was written, contain upon the upper right-hand corner, upon the line near the top margin on the deed, the words: ' M. J. Cantwell, Law-Blank Publisher, Madison, Wis.' ? "   The court submitted that question to the jury, with the following remark: "If you have understood the instructions which I have given you, the answer to that question, one way or the other, would not necessarily alone determine your verdict; and if you should say ' Yes,' and then say ' Yes' in answer to this next question, to wit, ' (2) If you find that the deed in question did contain such words, do you further find that the deeds containing such words upon the upper right-hand corner were [not] in existence upon the 24th day of April, 1884? ' "— which last question was submitted with the following remark: " If you answer both those questions favorably to the defendant, it would be consistent with a general verdict for the defendant, and inconsistent, gentlemen, with any other."

The court thereupon charged the jury generally, and, after such charge, they retired to deliberate over their verdict, about 5 o'clock in the afternoon of November 30, 1889, and continued such deliberation until 9:40 P. M., when they returned into court with a general verdict in favor of the plaintiff, and assessing his damages at $1,896.44, and at the same time with an answer " Yes " to said question A propounded by the plaintiff's counsel, and both said general verdict and said answer and question A were thereupon handed to the judge and laid by him on his desk.   The court thereupon informed the jury that they had not answered questions 1 and 2 propounded by defendant's coun-

sel. The foreman thereupon replied that he did not suppose it was necessary since they had answered said question A. The court replied to the effect that it was necessary to answer the first question propounded by the defendant's counsel; that, if they answered that question "No," it would not be necessary to answer No. 2; but if they answered that question "Yes," then it would be necessary to answer No. 2. The general verdict and answer to said question A remained lying on the court's table all this time, and until the jury finally returned into court with answers to questions 1 and 2 propounded by defendant's counsel. The court thereupon amended said second question by striking out the word "not." The jury then retired again, and, after an absence of one hour and twenty minutes, returned into court with an answer "Yes" to the first question propounded by the defendant's counsel, and the foreman then and there stated to the court that they had found, as an answer to the second question submitted by the defendant's counsel, the following, to wit: "That there was this one deed in existence on the 24th day of April, 1884, or the blank on which it was written, with those words upon the upper right-hand corner." The court thereupon asked the jury if he should write the answer to the said question in that way, and they answered "Yes." The same was thereupon written accordingly, and the court received all of said answers and said general verdict as the verdict in said cause, and thereupon discharged the jury. Everything that took place between the court and the jury, as above stated, subsequent to the time that they first retired,— about 5 o'clock in the afternoon,— was in the absence of the defendant's counsel, and without any notification to such counsel to be present.

The defendant thereupon moved the court, upon its minutes, to set aside said general verdict and findings and for a new trial for several reasons; among others, as being

against the evidence, and against the law and evidence, and contrary to the instructions of the court, and for the several things that occurred in relation to the findings and verdict in the absence of defendant's counsel as stated, because the jury had failed to answer the second question propounded by the defendant's counsel, and because the answers were evasive and unwarranted, and the findings of the jury inconsistent. The motion was overruled, and judgment was thereupon ordered upon said verdict and findings in favor of the plaintiff. From the judgment entered thereon, the defendant appeals.

*H. W. Chynoweth*, for the appellant.

For the respondent there was a brief by *Bashford & O'Connor*, and oral argument by *R. M. Bashford*.

CASSODAY, J. The learned counsel for the defendant strenuously contends that the evidence is insufficient to support the general verdict or any of the special findings in favor of the plaintiff. The view we have taken of the case renders it unnecessary for us to determine that question.

The statute requires the court to direct the jury to find a special verdict when requested as prescribed. Sec. 2858, R. S. Such verdict must " be prepared by the court in the form of questions in writing, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. The court may also direct the jury, if they render a general verdict, to find in writing upon any particular question of fact *to be stated as aforesaid.*" *Ibid.* This last provision is applicable to the case at bar. The purpose of thus submitting particular controverted questions of fact is to secure a direct answer free from any bias or prejudice in favor of or against either party. It is a wise provision in certain cases when properly administered. It has often been demonstrated in the trial of causes that the non-expert juryman is more liable than

the experienced lawyer or judge to be led away from the material issues of fact involved by some collateral circumstance of little or no significance, or by sympathy, bias, or prejudice; and hence it is common practice for courts, in the submission of such particular questions and special verdicts, to charge the jury, in effect, that they have nothing to do with, and must not consider the effect which their answers may have upon, the controversy or the parties. The learned trial judge, when in health, has frequently so charged. It is certainly a very proper thing to do when the business or reputation of either party is such as to naturally stimulate a bias in favor of the one party or the other. It is true that juries, under such a charge, sometimes return inconsistent answers; but it is usually because such is the honest result of their unbiased judgment upon different branches of the evidence.

In the case at bar the learned trial judge seems to have been particularly anxious to prevent such inconsistent answers; and hence he explained to the jury what different answers to each particular question so submitted would be consistent, and what inconsistent, with a general verdict in favor of one or the other party. This was peculiarly calculated to secure special answers which would be consistent with a general verdict rather than in accordance with the weight of evidence upon each of such particular questions. The effect of such instructions was very much the same as though the court had charged the jury that after they had determined upon a general verdict then they should answer the particular questions submitted in the way they had thus been informed would be consistent with such general verdict. This was misleading, and well calculated to defeat the very object of the statute in authorizing such submission.

But this error was aggravated by what subsequently occurred, as indicated in the foregoing statement. After

being out about five hours, the jury returned a general verdict in favor of the plaintiff, and an affirmative answer to question A submitted at the request of the plaintiff, but without answering either of the questions requested by the defendant. In the absence of any counsel on the part of the defendant, the court then informed the jury, in effect, that it would be necessary for them to answer the two questions submitted at the request of the defendant, and thereupon erased the word "not" from the second of those questions. The jury thereupon retired again to consider said two questions so requested by the defendant, and nothing more,— the court in the mean time having accepted and retained the general verdict and question A and the answer to it,— both having been returned in favor of the plaintiff. By thus retaining the general verdict and question A and the answer to it, and sending the jury out to consider the two unanswered questions merely, under the instructions which had previously been given as to the way in which such questions should be answered in order to make the same consistent with the general verdict, they had but one thing to do, and that was to return answers which would be thus consistent with the general verdict. But the jury manifestly had trouble in reaching such conclusion, under the evidence, as they were absent an hour and twenty minutes before reaching any conclusion, and then returned with an affirmative answer to the first of those questions, and a long verbal statement in lieu of a written answer to the second, which, on consultation with the court, was finally agreed upon as the proper answer to the second question, notwithstanding they had previously been instructed to answer that question in the affirmative, in case they answered the first in the affirmative. But, as indicated, the second question had in the mean time been changed by the court, striking out the word "not," and no instruction had been given upon that question so modified.

The learned counsel for the plaintiff claims that these questions were immaterial, but the learned trial judge manifestly did not think so, for upon the point involved he expressly charged the jury: "Now, that is a sharp question drawn out again, gentlemen, dividing these parties, and it is submitted to you to find as you believe the truth is upon it."

A verdict is a declaration of the truth as to the matters of fact submitted to the jury. However many questions it may have determined, yet it should be returned as a whole unit. From its very nature, separate parts of it should not be determined and returned at different times and in separate fractions. There was manifestly a mistrial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.