BAUER, Administrator, Respondent, vs. RICHTER and another, imp., Appellants.

*May 19— June 2, 1899.*

*Negligence causing death: Master and servant: Evidence: Instructions to jury: Special verdict: Immaterial error: Measure of damages.*

1. A corporation contracted with two of its incorporators, the defendants, who owned a majority of the stock, and who were doing business as copartners, for the construction and setting-up in its plant of certain heavy machinery. As the machinery arrived on cars the superintendent of the corporation directed and caused different men, employed by it, to unload and place the same in the building. The foreman of each gang of men was directed to keep account of the time they were employed in handling the machinery, and it was reported to the bookkeeper of the corporation and charged to the copartners on the corporation books and by them paid direct to the corporation. To facilitate unloading, under the direction of the superintendent and foreman of the corporation, a derrick was erected, which, while some machinery was being unloaded, fell and

Bauer vs. Richter and another.

killed plaintiff's intestate. Deceased had been in the general employ of the corporation for over a year and was directed by its foreman to do the work in which he was killed. There was no one representing the copartners present to give instructions or direct the work. *Held*, that plaintiff's intestate and the other laborers, as well as the superintendent and foreman, continued subject to the selection, control, and dominion of the corporation, and sustained no relation to the defendants under any contract of hire, express or implied, and that the copartners were not liable for the death of plaintiff's intestate.

2. The finding of the jury that plaintiff's intestate was the servant of the defendants is not sustained by testimony of the superintendent of the corporation that he hired deceased to assist in unloading the machinery, where the witness also testified that deceased was hired by the foreman of the corporation to work for it several months before the accident, and continued on its pay roll as its employee until his injury, and there was no suggestion or evidence of any new hearing or change of relation, and an absence of evidence of any authority from defendants to hire men for them, or that the superintendent assumed to act under any such authority.

3. A trial court should not in its charge, by any authoritative statement, inform the jury of the ultimate result of their answer to questions submitted for special verdict; and while expressions in the charge to the jury, such as "the plaintiff says you should answer this question, Yes," are not commended, they are not material error.

4. In an action based on negligence of the defendant causing the death of a married man, an instruction to the jury that they are not limited to the simple value of the support and protection of the widow, but might consider the increase that the earnings of the husband would have made to his property and the reasonable expectation the widow had of ultimately receiving a share, is not error.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Reversed.*

The defendants *Frederick* and *Ferdinand Richter* were partners under the firm name of F. Richter & Son, doing business as founders and machinists at Milwaukee. They became interested in the business of manufacturing sugar from beets, and thereafter a corporation was formed, in which the two *Richters*, Korn, and Jungbluth were the in-

corporators, the former owning the majority of the stock.
The corporation was known as the "Wisconsin Beet Sugar
Company," and its purpose was the erection and operation
of a factory at Menominee Falls, Wisconsin. Richter & Son
entered into a contract with this company to construct and
set up in the factory the machinery necessary for its opera-
tion. The sugar company commenced the erection of its
factory building during the fall or early part of the winter of
1896, under the superintendence of one Karl G. Korn. Gangs
of men were employed, some as carpenters to work on the
building, and others about the grounds generally. During
the summer and fall of 1897, Richter & Son manufactured
some of the machinery and apparatus necessary for the fac-
tory, loaded it on cars, and shipped it to Menominee Falls
by rail. When it arrived at that place it was unloaded from
the cars by the men employed by the sugar company, and
placed in the building. By direction of Korn, the foreman
of each gang of men was directed to keep an account of the
time they were employed in handling the machinery, and it
was reported to the bookkeeper, and charged to the *Richters*
on the books of the sugar company. As the work progressed,
the *Richters* sent shipments of heavy machinery, and, in
order to remove the same from the cars speedily, it became
necessary to set up a derrick for that purpose. The cars
came along the north side of the building, near a large door.
A large platform was built across the track in front of this
door, and the end of the car was run up to this platform.
Under the direction of Korn, the foreman of the carpenter
gang at work for the sugar company erected a derrick to
facilitate the handling of the machinery. This derrick con-
sisted of an upright timber resting on the ground at the out-
side of the platform, on the top of which was placed another
heavy timber, with the other end resting in a window over
the door. Braces were fastened to the upright timber near
the top, standing east and west and resting on the ground.

Bauer vs. Richter and another.

One of the shipments from the *Richters* consisted of a car loaded with four large vacuum pans. These pans were of iron, cast in the form of half a sphere, weighing between five and six tons, and were eight feet in diameter and about four feet high. When these pans arrived, Korn gave orders to the foreman of the yard crew, Mr. Barndt, to unload and place them in the factory building. While this work was being done, the derrick was brought into use, and, while attempting to turn over one of the pans, the timber at the top of the derrick fell, and fatally injured William Radke, plaintiff's intestate.

This action was brought against the *Richters* to recover damages for such injury. The Wisconsin Beet Sugar Company was named as a defendant with the *Richters*, but no service was ever had upon the company, and it took no part in the subsequent litigation. The negligence alleged consisted in the defective construction of the hoisting apparatus, and it was charged that deceased came to his death while in the employ of the defendants. The answer admitted the formal allegations of the complaint, and put the other matters in issue by denial.

The case was tried before a jury, who, by a special verdict, found: (1) That, at the time of the accident, Radke was employed in doing the work of the *Richters*, as their servant; (2) that Barndt was acting as foreman of the *Richters* in unloading the pans; (3) that Korn was acting as superintendent of the *Richters* in unloading the pans; (7) that said defendants did not furnish Radke a reasonably safe place to work; (8) that his working place was rendered unsafe by the defect in the derrick; (9) that defendants did not take reasonable care to make deceased's working place safe; (10) that the injury to Radke was the natural and probable result of such negligence; (11) that the defendants ought to have foreseen an injury to deceased as the natural result of their negligence; (16) that plaintiff's damages were $5,000. The findings

not included in the above were formal, and not necessary to be mentioned herein.

Exceptions were taken to the first, second, and third questions submitted, and to the charge of the court in the particulars mentioned in the opinion. A motion to set aside the verdict and for a new trial was denied, and judgment was ordered for the plaintiff. From the judgment so entered, this appeal is taken.

For the appellants there was a brief by *Van Dyke & Van Dyke & Carter*, and oral argument by *W. E. Carter*.

*J. W. Wegner*, for the respondent, contended, *inter alia*, that servants who are employed and paid by one person may nevertheless be *ad hoc* the servants of another, in a particular transaction, and that too when their general employer is interested in the work. *Higgins v. Western U. Tel. Co.* 156 N. Y. 75; *Wyllie v. Palmer*, 137 N. Y. 248; *Johnson v. Ashland W. Co.* 71 Wis. 553; *Bigham v. C., M. & St. P. R. Co.* 79 Iowa, 539; *Sloan v. I. C. R. Co.* 62 Iowa, 728; *Vary v. B., C. R. & M. R. Co.* 42 Iowa, 246; *McInerney v. Delaware & H. C. Co.* 151 N. Y. 411.

BARDEEN, J. The chief ground upon which it is sought to overturn this judgment is that the evidence fails to show that the relation of master and servant existed between the *Richters* and the men who built the derrick, or who were directing the unloading of the machinery, or with the deceased himself. The complaint alleges that deceased was in the employ of the defendants as a common laborer. The proof shows that he was in the general employment of the beet sugar company, and had been ever since the spring before the accident, and, unless the circumstances hereinafter referred to make him the servant of the defendants, no recovery can be sustained.

Defendants' negligence is predicated upon the ground of the negligent construction of the derrick used for the re-

moval of the vacuum pans from the cars. The proof is that. this derrick was erected by and under the immediate direction of Mr. Hoos, the foreman of the carpenter gang putting up the factory building, from materials belonging to the beet sugar company, and that Mr. Korn, the superintendent of that company, gave directions as to the manner of its construction. There can be no question of a doubt but that, in the general conduct of the work there done, Korn, Hoos, Barndt, and all of the men under them were in the employ of the beet sugar company, and were not employees or servants of the *Richters*. There can be no question of the further fact that, under some arrangement between the parties, the employees of the beet sugar company entered upon the undertaking of unloading the machinery sent by the *Richters*. The latter were under contract to set up the machinery in the building, and, to avoid the necessity of sending a crew of men with each car, it was the practice of Korn to direct some one of the crews under his control to take the machinery from the cars. The time of the men while engaged in this undertaking was charged to the *Richters*, and paid by them direct to the company. There was no one in the *Richters'* employ there to guide or direct the work. Not one of the men so employed could have sustained any claim against the Richters for their wages, nor could any one of them have been discharged from their employment by any act of theirs. The men who built the platform and the derrick, as well as the men who were unloading the cars, were all on the pay rolls of the beet sugar company, and subject to the control and dominion of that company. The mere fact that they were engaged in doing work which the *Richters* were under contract to do did not, of itself, create the relation of master and servant between them. All of these men continued subject to the control and dominion of their original master. They sustained no relation to the defend-

ants under any contract of hire, express or implied. Neither did the defendants, nor any one representing them, assume to suggest or direct the means that should be employed or the manner in which the work should be done. The beet sugar company entered upon the work, adopting its own appliances, and controlling and directing its own servants. Thus, upon a survey of the testimony, we find all of the usual tests which establish the relation of master and servant wanting.

The doctrine of *respondeat superior* has no application in such cases, unless it can be determined that the relation of master and servant exists. Where there is no power of selection or direction, there can be no superior. When one is employed to do the work with his own means and by his own servants, he has the power of selection and direction, and he, and not the person for whom the work is done, is the *superior*. *Du Pratt v. Lick*, 38 Cal. 691. In considering this same question, our own court has said: " The test is, Had the defendant the right to control the conduct of the person doing the work, as respects the *mode* and *manner* of doing it, in the particular complained of ?" *Kuehn v. Milwaukee*, 92 Wis. 263. Nearly all of the cases agree that the power of selection and the right to control are the most powerful elements in determining the question of whether the relation of master and servant exists, and, unless that relation does exist, no recovery, in cases of this kind, can be had.

The jury in this case have found that Radke was, at the time of the accident, doing the work of the defendants as their servant. We are satisfied that there is no credible testimony in the case to sustain this finding. In addition to the facts already stated, there are others that stand out so bold and prominent as to utterly overwhelm and crush down the conclusions testified to by the witness Korn; for it is upon some random statements to be found in his testimony

that this verdict seems to have been based. At one place in the testimony he says that he hired the deceased to assist in unloading this machinery. Standing by itself, this statement would tend to support the jury's conclusion. But the same witness admits that Radke was hired by the foreman to work for the beet sugar company several months before the accident; that he was carried on the pay roll for that company as an employee during that time; and there is not a suggestion of any new hiring or change of relation. Other testimony conclusively shows that the deceased entered into the employ of the company in the spring of 1896, and continued in service until the time of the accident, in January, 1897. Again, he said he had authority to hire men for the *Richters.* Not a witness was produced, or a word of testimony given, tending to show that he assumed to act under that authority. All that he attempted to do was to direct the men under his control to unload the machinery when it came, and to have the foreman keep the time of the men so employed, and have it charged to the defendants. Under these circumstances, the conclusion is irresistible that these workmen were servants of the beet sugar company, and not of the defendants. On the question of the defective condition of the appliances used, there was testimony sufficient to warrant the submission of that fact to the jury; but we need not further consider that branch of the case, so long as the beet sugar company has not been brought in to defend.

In the charge of the court, and with reference to almost every question submitted in the special verdict, the judge made use of expressions as follows: " The plaintiff contends that you should answer this question, Yes." " The plaintiff says that you should answer this question, No; the defendant says that you should answer it, Yes." This language is vigorously criticised as a violation of the rule established by this court that the trial judge should not inform the jury of

the effect of the answers to the questions in the special verdict.  *Ryan v. Rockford Ins. Co.* 77 Wis. 611; *Coats v. Stanton*, 90 Wis. 130; *Conway v. Mitchell*, 97 Wis. 290.  The argument is that, the judge having laid so much stress upon the contentions of the parties, the jury are, in effect, informed how they should answer each question, in order to support a judgment one way or the other.  There is some force to this criticism when we consider that the purpose of a special verdict is to secure the determination of cold questions of fact, unbiased and uninfluenced by the ultimate result.  At the same time, we are not prepared to say that this practice is reversible error.  It has always been the practice of trial courts to state to the jury the contentions of the respective parties.  Certainly, every juror, with sufficient intelligence to entitle him to sit in a case, gets an idea of the general result of his verdict.  The thing to be guarded against is that the court shall not, by any authoritative statement from the bench, inform the jury of the ultimate result of their deliberations.  We do not commend the practice referred to as one to be followed.  It comes so close to the dividing line that it were better to be abandoned.  The better practice is to state the facts to be found, and that the burden of proof rests upon the party asserting it, as the case may be, without laying emphasis upon the contentions of the parties.  This will be more likely to secure unbiased results, and tend to the better administration of justice.

The jury were charged that they were not limited to the simple value of the " support and protection " of the widow, but might consider the increase that the earnings of the husband would have made to his property, and the reasonable expectation the widow had of ultimately receiving a share.  This statement of the law has received the sanction of this court in the following cases: *Castello v. Landwehr*, 28 Wis. 522; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447;

*Kaspari v. Marsh,* 74 Wis. 562; *Rudiger v. C., St. P., M. &
O. R. Co.* 101 Wis. 292.

*By the Court.*— The judgment of the superior court of
Milwaukee county is reversed, and the cause is remanded for
a new trial.

On the question which of two or more persons is the master of an-
other who is conceded to be the servant of one of them, see note to
*Hardy v. Shedden Co.* (47 U. S. App. 362), in 37 L. R. A. 33.— REP.