McGowan, Appellant, v. Story and others, Respondent.

*No. 20 (1974). Argued September 3, 1975.—Decided October 28, 1975.*

(Also reported in 234 N. W. 2d 325.)

---

[2] *Howard v. Fleming* (1903), 191 U. S. 126, 136, 24 Sup. Ct. 49, 48 L. Ed. 121.

For the appellant there were briefs by *Axley, Brynelson, Herrick & Gehl* of Madison and *Kaftan, Kaftan, Kaftan, Kuehne & Van Egeren, S. C.* of Green Bay, and oral argument by *J. Robert Kaftan.*

For the respondents there was a brief by *Robert D. Johns* and *Johns, Flaherty, Harman & Gillette, S. C.,* all of La Crosse, and oral argument by *Robert D. Johns.*

HEFFERNAN, J.   This negligence action for damages arose out of an accident that occurred in Monroe county on August 4, 1970. The plaintiff, Francis McGowan, was injured by an eruption of hot tar while he was in the process of transferring the hot-tar mix from the tanker truck owned by his employer, the Stang Transport Com-

pany, to a distributor vehicle owned by the D. L. Gasser Construction Company. The case was tried to a jury, which returned a verdict finding the plaintiff, Francis McGowan, 50 percent negligent, Duane Story, the operator of the distributor truck, 20 percent negligent, and Story's employer, the D. L. Gasser Construction Company, 30 percent negligent.

On motions after verdict, the trial judge sustained the jury's findings and entered judgment dismissing the complaint. The appeal is taken by the plaintiff from the whole of the judgment.

The plaintiff on this appeal argues that the trial judge committed error when he refused to instruct the jury on the effect of its answers to the special verdict questions. As a subsidiary to that issue, plaintiff argues that the case should have been submitted on a general verdict, which would have made clear to the jury the effect of its answer.

The plaintiff also contends that the statute passed in 1971, which permits recovery by a plantiff not more than 50 percent negligent, should be deemed retroactive in effect, and therefore the plaintiff, McGowan, under the jury's findings, was entitled to 50 percent of the damages.

The plaintiff also argues that the evidence was not sufficient to sustain the verdict, and furthermore the verdict as returned could only have been based on inconsistent findings of fact.

In connection with the evidentiary issues, the plaintiff contends that because one Harry Polzin, an employee of the defendant Gasser, was not called when his testimony would have been material and relevant, the absent witness instruction should have been given to the jury.

We decide each of these issues adversely to the plaintiff and affirm the judgment.

The facts underlying this accident and the alternative hypotheses upon the respective versions of the parties

relative to the cause of the accident are detailed and complex. They will be dealt with, however, only to the extent that those facts are necessary to the disposition of the issues set forth above.

The injured plaintiff, Francis McGowan, drove a tanker truck for the Stang Transport Company. The truck driven by McGowan was used for the hauling of "emulsion," which is a substance composed of tar and a high percentage of water, and MC–5, a hot-asphalt mix, which is heated to the temperature of approximately 350 degrees fahrenheit prior to transportation. In the event that MC–5 and emulsion are allowed to mix at high temperatures, a marked reaction occurs as a result of the sudden superheating of the water in the emulsion.

The day before this accident occurred, the plaintiff delivered a load of emulsion in his tanker to the Fond du Lac area. He then returned to his home base at Green Bay with an empty tank. He stated that, while en route, he opened all the valves and cover of the tanker in order to clean it out and to dry all the emulsion in the tanker. There was evidence that, whatever effect this air drying would have, the external air would not reach a reservoir, which consisted of some piping outside of the shell of the tank proper but within the insulated sheathing of the tanker.

The next morning, the date of the accident, the same tanker truck was loaded with MC–5, which at the time of loading had a temperature of approximately 350 degrees fahrenheit. At the time the accident occurred, the temperature of the MC–5 remained within a few degrees of that original temperature.

The plaintiff testified that there was no evidence of any foaming or eruption at the time he loaded the tanker. He then drove the tanker loaded with the hot asphalt to Sparta, where he was met by Polzin, an employee of the D. L. Gasser Construction Company which was intending to use the hot asphalt on road work. The plain-

tiff was guided to the location where the MC–5 was to be loaded into an Etnyre blacktopper preparatory to its distribution onto the road surface by the employee of Gasser, Duane Story, who, with Gasser, is a defendant in this action. The two vehicles were parked side-by-side. According to the plaintiff's testimony, Polzin then went back one-half mile to a curve in the road to stop traffic during the transfer process.

During the transfer process, while McGowan was on the top of his tanker, and after a connection was made to the blacktopper distributor, the MC–5 in the tanker erupted, throwing the superheated tar 20 or 30 feet into the air. To avoid more serious injury, McGowan jumped from the top of the tanker onto the roadway and severely injured his right ankle.

There was conflicting evidence to explain this accident. It was contended by the plaintiff that the defendant Story had improperly connected the hose from the tanker to the distributor and that, instead of attaching that hose to the inlet, he hooked it up to an outlet, which by pump action forced air into the tanker causing a bubbling and the subsequent geyser.

It was the contention, basically, of the defendants that the negligence was on the part of plaintiff. When the tanker hose was in the process of being connected, the defendant Story saw a quantity of liquid resembling cold pork gravy run out of the hose. Defendant Story states that, when he asked McGowan what the liquid was, he was told it was emulsion. This fact, the defendants argue, shows that emulsion was present, at least in the hose. Moreover, there was no evidence to show that opening the hatches and valves the day before would have effectively cleared the emulsion from the reservoir beneath the tank. This evidence, the defendants argue, supports the theory that the plaintiff was negligent in failing to clean the vehicle of emulsion.

The defendants' theory is that this emulsion was already superheated as a result of its location within the insulation of the tanker and, when the valve opened, permitting the hot tar to come in contact with the emulsion, an upward eruption occurred within the tanker.

The plaintiff testified that the eruption occurred immediately after he moved the lever which permitted the MC-5 to flow into the reservoir. The defendant could not see what McGowan was doing at the top of the tank and, accordingly, could not testify that the eruption occurred immediately after the lever was moved.

The plaintiff testified that the eruption stopped immediately when the defendant ran over to the back of the distributor vehicle and changed a lever position. The defendant denied that he manipulated any of the levers at that time and stated that the eruption stopped spontaneously.

Expert opinions were presented by both of the contending parties and, on the basis of such expert evidence, there was some evidence which would tend to sustain the theories of either the plaintiff or the defendants.

On this appeal by the plaintiff, he contends that the evidence was insufficient to support a finding that he was 50 percent negligent. Additionally, as set forth above, he contends that the trial court committed error which prevented a proper jury verdict.

He first contends that the trial judge erred in not instructing the jury of the effect of its answers. The record shows that the plaintiff asked for a general verdict, which would have made apparent the effect of the jury's answer. Moreover, during the course of its deliberations, the jury returned to the courtroom and asked to be advised of the effect of its answers on the rights of the parties.

The trial judge declined as a matter of discretion to submit the general verdict and submitted a special verdict

in the ultimate fact form. He also refused to advise the jury about the effect of its answers.

The argument was made by the defendant that this court is not, as a matter of right, required to address itself to the plaintiff's demand for an instruction to the jury on the effect of its answers because the plaintiff had waived any demand for such an instruction and had asked for relief and instructions which were inconsistent with a general verdict.

Although it is arguable that the plantiff did indeed waive his request to have the jury instructed on the effect of its answers, we conclude that it is fruitless to pursue that line of inquiry because the judge was foreclosed by the law of this state from advising the jury. We have said:

"The fundamental rule in this state is that it is reversible error for either the court or counsel to inform the jury of the effect of their answer on the ultimate result of their verdict . . . . This is true whether the jury is explicitly informed or informed by necessary implication." *Kobelinski v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 504, 520, 202 N. W. 2d 415; *see also: Ryan v. Rockford Ins. Co.* (1890), 77 Wis. 611, 46 N. W. 885; *Blahnik v. Dax* (1963), 22 Wis. 2d 67, 76, 125 N. W. 2d 364.

While the plaintiff agrees that the law stated in *Kobelinski, supra,* is currently applicable in this state, he asks us to change that rule on the ground that it ignores trial practice realities. The plaintiff relies upon the dissent of Mr. Chief Justice HALLOWS in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 177 N. W. 2d 513, the excellent memorandum opinion of the trial judge in this case, and a number of law review articles that urge that juries be fully informed of the effect of their answers. Among the legal journals cited are 36 Texas Law Rev. (1957), 44; 1940 Wisconsin Law Rev. 400; 53 Marquette Law Rev. (1970), 293. Each of these opinions and

articles criticizes the present rule on the basic ground that juries, in the absence of correct information of the effect of the answers, are nevertheless likely to exercise their power on the basis of speculation.

The plaintiff points out that some juries, misinformed or ignorant of the effect of their answers, will make findings which they believe will "do justice," but which do not in law have the result intended. Other juries, who either by experience or correct prior information, understand the effect of their answers, will be able to adjust their findings to accomplish the result desired. This disparity of conduct, plaintiff alleges, results in the denial of equal justice, which can be alleviated only by having the trial judge tell the jury the effect of its answers.

It is argued that the refusal to fully inform the jurors is contrary to the traditional trust we place in the ability of juries to do justice. Of course, this criticism is in itself based upon a fundamental distrust of the jury system, for it assumes that jurors are not faithful to their oath to follow the instructions of the trial judge. We decline to explore the pros and cons of this controversy, because any change in the rule would be contrary to the established basis for the use of juries, particularly in negligence cases.

With the exception of the cursory dicta in the cited dissent of Mr. Chief Justice HALLOWS, the plaintiff's point of view has no support in Wisconsin law.

The rationale of our present rule is explained in *Ryan v. Rockford Ins. Co.* (1890), 77 Wis. 611, 615, 616, 46 N. W. 885, wherein this court said:

"The purpose of thus submitting particular controverted questions of fact is to secure a direct answer free from any bias or prejudice in favor of or against either party. . . . It has often been demonstrated in the trial of causes that the non-expert juryman is more liable than the experienced lawyer or judge to be led away from the

material issues of fact involved by some collateral circumstance of little or no significance, or by sympathy, bias, or prejudice . . . ."

Also, in *Anderson v. Seelow* (1937), 224 Wis. 230, 234, 271 N. W. 844, we said:

"The sole purpose of a special verdict is to get the jury to answer each question according to the evidence, regardless of the effect or supposed effect of the answer upon the rights of the parties as to recovery. To inform them of the effect of their answer in this respect is to frustrate this purpose." *See also: Kobelinski, supra,* at 521.

Under our system of jurisprudence, the jury is the finder of fact and it has no function in determining how the law should be applied to the facts found. It is not the function of a jury in a case between private parties on the determination of comparative negligence to be influenced by sympathy for either party, nor should it attempt to manipulate the apportionment of negligence to achieve a result that may seem socially desirable to a single juror or to a group of jurors.

Moreover, under the Wisconsin comparative negligence law, where multiple parties are involved the effect of a jury's apportionment of negligence and the impact of the comparison of negligence between negligent tort-feasors can be complex indeed. It is occasionally apparent that these complexities are not understood by lawyers and try the deliberative faculties of judges.

While we recognize the validity of the problem posed by the plaintiff, there is no evidence that the remedy of advising a jury of the effect of its answers would not result in jury confusion and create a situation more to be deplored than that which presently exists.

We suggest that the jury should be admonished, and impressed, that its function in a negligence case is fact-finding only and that it is not its role to usurp the

legislative function under the comparative negligence law or the judicial function in interpreting the comparative negligence law. It is the role of the judge, acting under the law, and not the jury, to implement the general policies of the comparative negligence statute. We decline to consider the change in the jury function proposed by the plaintiff.

Under the legislation as it now exists, and has existed since 1971, a plaintiff, such as McGowan in this case, who has been found 50 percent negligent, may recover 50 percent of his damages. Under the law as it existed at the time of the accident, August 4, 1970, a plaintiff whose negligence was equal to that of the defendant was foreclosed from any recovery.

The trial judge in this case correctly concluded that sec. 895.045, Stats., as amended in 1971, has no retrospective operation; and, accordingly, the recovery of the plaintiff must be based on the legislation as it existed prior to the amendment of the statute.

This question has been squarely and finally decided in *Holzem v. Mueller* (1972), 54 Wis. 2d 388, 398, 195 N. W. 2d 635. Although Mr. Chief Justice HALLOWS dissented in *Holzem,* that view found no support with the rest of the court. The plaintiff has offered no reasons, other than those rejected by the court at the time of *Holzem,* why we should hold the statute to be retroactive.

The plaintiff also claims that the trial judge erred in failing to give the absent witness instruction in regard to Harry Polzin, the Gasser employee who guided the plaintiff to the scene of the transfer and who was about half a mile from the site when the accident occurred.

We conclude that the trial judge properly refused to give that instruction. The criteria for the use of the absent witness instruction (Wis J I—Civil, Part I, 410) are set forth in *Thoreson v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 231, 237, 201 N. W. 2d 745:

"The [absent witness] instruction may properly be given when a witness is not called if the witness is material and within the control of the party against whom the instruction is to be given or when it would be more natural for that party to call the witness."

In the instant case, the trial judge properly concluded that Polzin, as the employee of Gasser, was available to be called, in the sense that it was more natural for his employer, Gasser, to call him as a witness than for the plaintiff to have him appear. The status of Polzin satisfies one criterion of *Thoreson,* in that he was in the control of the party against whom the instruction would have been given and that it would have been more natural for that party to call him.

However, the trial judge found that Polzin was not a material witness. The trial judge in his memorandum opinion noted that the only facts with respect to Polzin indicated that he was half a mile away and that he saw the eruption of the tar into the air. The plaintiff contends that Polzin was a material witness, because Polzin could have testified how long the eruption lasted and could have seen the defendant run to the back of the truck for the purpose of adjusting the levers to stop the eruption.

In respect to the length of time that the eruption lasted, there appears to be no conflict in the testimony, nor is the length of time that the eruption continued relevant. It would be relevant and material and highly probative of the plaintiff's point of view if there were anything in the evidence to show that the eruption ceased only when the defendant Story ran to the back of his truck and adjusted the levers. There is, however, no evidence whatsoever to show that Polzin could see the trucks from the position where he was directing traffic or that he could have seen the actions of either the plaintiff or the defendant from a half mile distance. It was

the plaintiff's testimony that he was directing traffic half a mile away, where he "went on around the bend . . . to stop traffic."

The record shows that Polzin, after seeing the eruption, hurried to the scene and attempted to render first aid. While there, it is possible that he might have made some observation of the position of the levers at the rear of the distributor truck, and this, in turn, might have been probative of the defendant Story's conduct in the interim between the commencement of the eruption and its cessation. However, it is not argued by the plaintiff, who was at the scene, that Polzin could have supplied those observations.

We conclude that the testimony of Polzin was not material, particularly under the state of the facts postulated by the plaintiff. Moreover, there is nothing to indicate that the failure of Gasser or of Story to call Polzin was in any way influenced by the unwillingness of those parties to let the jury have the truth. We stated in *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 148 N. W. 2d 65, that the absent witness instruction should be narrowly construed to apply only to those cases where the element of the concealment of truth or the unwillingness to present the truth is reasonably to be found. The trial court correctly refused the absent witness instruction.

The defendants have also asked this court to review whether the trial judge erred in submitting a question to the jury on the negligence of D. L. Gasser Construction Company. Gasser was not joined as a party defendant in the original complaint. The plaintiff moved to amend that complaint to state a cause of action against Gasser only after cross-examination of D. L. Gasser revealed that the company had failed to instruct Story, its operator, on the danger of permitting a mixture of emulsion and hot MC–5. The trial judge permitted such amend-

ment to the pleadings. It is clear that sec. 269.44, Stats., confers a broad discretion upon the trial judge to permit an amendment when the revised pleading arises out of the same occurrence as that upon which the original pleading is based. *See: Wipfli v. Martin* (1967), 34 Wis. 2d 169, 148 N. W. 2d 674; *Troy Co. v. Perry* (1975), 68 Wis. 2d 170, 228 N. W. 2d 169.

The defendants do not question that broad discretion of the trial judge but argue that the joinder of Gasser can only be permitted on a theory that is completely inconsistent with the facts that the plaintiff alleges to show Story's negligence.

The defendants argue that, in respect to Story, the plaintiff alleges that Story was negligent in connecting the hose to the wrong pipe and that in respect to Gasser the negligence alleged was the failure to instruct Story of the dangers of mixing MC–5 and emulsion. In other words, as the defendants view the complaint as amended, the plaintiff is maintaining that the tanker was clean and free of any emulsion and that the eruption was due only to Story's negligence, but also is alleging that the plaintiff's tanker was not clean and the explosion was due in part to Story's failure to take proper precautions because his employer Gasser had negligently failed to advise him of the dangers of mixing MC–5 and the residual emulsion left in the tanker by McGowan.

We see no fatal inconsistency herein. This court has defined a cause of action as a single occurrence or grouping of facts that combined in whole or in part to create an incident as viewed by a layman. The cause of action here was clearly unitary—the event of the eruption of the hot tar. Thus, but one cause of action was pleaded and, by the amendment to the complaint, only another factual question was presented. Moreover, under the facts as set forth in the record, it is not absolutely apparent that the accident was not caused in part by the

failure of the plaintiff to properly clean his tank, in part by the failure of the defendant Story to properly connect the hose to the distributor, and in part by the failure of Gasser to warn Story of the hazards involved in the operation. These facts are not mutually exclusive, and from the evidence the jury could have concluded that negligent acts of the plaintiff and both defendants were all substantial factors in causing the injury. We see no inconsistency.

The plaintiff also claims that the verdict should be set aside because it is contrary to the great weight and clear preponderance of the evidence. An argument perhaps could be made that the greater weight of the evidence tends to show a greater culpability upon the defendants than upon the plaintiff. That test is, however, not pertinent to a jury trial. It is the test which this court uses when reviewing a factual determination of a trial judge. If there is any credible evidence to support a jury's verdict, irrespective of the weight of evidence to the contrary, it is the obligation of this court to sustain the jury's finding. *Lipinski v. Pakulski* (1974), 62 Wis. 2d 628, 635, 215 N. W. 2d 468. Under that test of the evidence, as explained at length by the trial judge, the evidence was clearly sufficient to support the jury verdict.

*By the Court.*—Judgment affirmed.