MICHAEL ROMAN, AN INFANT, BY HIS GUARDIAN *AD LITEM*, CAROL ROMAN, AND CAROL ROMAN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. ROBERT MITCHELL, JR., SHERMAN WADE, JR. AND SALVATERRA CONSTRUCTION COMPANY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 11, 1978—Decided January 11, 1979.

Before Judges FRITZ, BISCHOFF and MORGAN.

*Mr. Leonard F. Rappa* argued the cause for appellants (*Messrs. Monico and Rappa,* attorneys).

*Mr. David Lustbader* argued the cause for respondent Mitchell, Jr. (*Messrs. Philip M. Lustbader and David Lustbader,* attorneys; *Ms. Susan L. Moreinis* on the brief).

*Mr. Edward J. Gilhooly* argued the cause for respondents Wade, Jr. and Salvaterra Construction Company.

PER CURIAM. Plaintiffs, a mother and her 12-year-old son, sued defendants for damages arising out of injuries to the son. The accident occurred when rear wheels of a truck owned by defendant Robert Mitchell, Jr. and driven by defendant Sherman Wade, Jr. fell off and struck the boy while he was standing with his bicycle on the shoulder of the New Jersey Turnpike. Defendant Salvaterra Construction Company was alleged to have been liable as the employer of defendant Wade. During the trial the action was dismissed as to defendants Salvaterra and Wade, the only issue remaining being whether defendant Mitchell was negligent in inspecting the lug nuts of his truck, thereby causing the wheels to separate from the truck. Defendant's theory was that the boy was contributorily negligent in being on the turnpike.

In response to special interrogatories the jury found defendant to have been 25% negligent and plaintiff 75% negligent. Accordingly, the judge molded the verdict under the Comparative Negligence Act and entered judgment for defendant. Plaintiffs' motions for a judgment *n.o.v.* and for a new trial were denied. They appeal and argue that the conduct of the infant plaintiff was not a proximate cause of the accident and that there was insufficient evidence to support the jury finding of 75% comparative negligence on the part of the infant plaintiff. We disagree. The finding

that plaintiff's conduct was 75% of the negligence and a proximate cause of the accident is supported by the evidence, and we will not disturb that finding of the jury or the trial judge's denial of the motions for that reason. *Dolson v. Anastasia,* 55 N. J. 2 (1969).

Plaintiff also contends that the trial judge erred in dismissing the action against Wade and Salvaterra Construction Company. Defendant Mitchell was the owner of the truck. At the time of the accident he was employed by Salvaterra Construction Company as a mason foreman. Under an informal agreement between Mitchell and Salvaterra, Mitchell would lend his truck to Salvaterra for use on any job where Mitchell was employed as foreman. On the day of the accident, a Saturday, Salvaterra requested and was granted use of Mitchell's truck on a job where Mitchell was not employed. This was the first time this had occurred. Salvaterra sent its employee Wade to drive the truck. Mitchell testified at trial that it was his responsibility alone to inspect and maintain the truck and that Salvaterra was not obligated in any way to monitor the truck's condition. Mitchell testified that he made regular inspections of the truck's equipment and that he would specifically check the lug nuts every two or three weeks. He estimated that the lug nuts had been inspected from one to two weeks before the accident.

At trial and in their brief on appeal plaintiffs sought to impose liability on Salvaterra and Wade on the theory of *respondeat superior,* arguing that both Wade and Mitchell were employees of Salvaterra. At oral argument plaintiffs for the first time suggested that there was an affirmative duty on both Wade and Salvaterra to personally inspect the vehicle and, in particular, the lug nuts on the wheels to be certain they were tight and that the vehicle was safe to operate. They contend the jury could find liability based on a breach of that duty in addition to the theory of *respondeat superior.*

We agree with the trial judge's ruling that neither Wade nor Salvaterra could be bound by the theory of *respondeat superior*. On the day of the accident Mitchell gratuitously loaned the truck to Salvaterra to be operated by another employee of Salvaterra. It was not used in connection with any job on which Mitchell was employed or with which he was connected. Mitchell's general employment by Salvaterra is not enough of a link to form the basis for imputing to Salvaterra or to Wade any negligence of which Mitchell might have been guilty in the maintenance of the truck. *Wright v. Globe Porcelain Co.*, 72 *N. J. Super.* 414, 418 (App. Div. 1962); *cf. Gilborges v. Wallace*, 78 *N. J.* 342 (1978).

█ Nor is plaintiff aided by espousing the theory that both Salvaterra and Wade had a separate affirmative obligation to inspect the truck to determine if the lug nuts were properly tightened.

The only allegation of negligence in the case is the alleged failure to discover the loose lug nuts and tighten them. The jury determined that this negligent act constituted 25% of the entire negligence causing the accident. That percentage cannot be increased by holding that one, three or ten persons are liable for not discovering that defective condition or by failing to correct it.

Nor can the percentage be increased by holding that two or more persons are responsible for the same negligent act on the theory of either *respondeat superior* or on an independent negligence basis. Where an employer's liability is solely vicarious and based on the theory of *respondeat superior*, the employer's degree of liability must be the same as the employee. *Kelley v. Curtiss*, 16 *N. J.* 265, 270 (1954).

We see no error in the ruling of the trial judge dismissing the action as to Salvaterra and Wade and, in any event, plaintiffs were not prejudiced by it.

█ Plaintiffs next urge us to "establish a precedent" by declaring that a jury should be instructed as to the effect of its percentage allocation in a comparative negligence case.

They reason that the absence of such an instruction might subvert the jury's intent which, they argue, is to allow a plaintiff to recover that portion of his damages indicated by defendant's percentage, regardless of whether plaintiff's own percentage was greater. We note that, although the trial judge refused plaintiffs' request to so instruct the jury, their counsel accomplished the same purpose during his opening and closing statements.

In the absence of any New Jersey authority on point, however, we choose to consider this question. As a general proposition it has been held that:

> * * * it is ordinarily unnecessary and improper for a trial judge to instruct the jury as to the law or the legal effect of their factual findings if all that is to be submitted to them for determination are factual interrogatories, with the legal conclusions thereon to be made by the court alone. [*Feder v. Bankers Nat'l Life Ins. Co.*, 100 *N. J. Super.* 458, 464 (App. Div.), certif. den. 52 *N. J.* 164 (1968)]

While New Jersey courts have yet to apply the foregoing principle in the comparative negligence context, we may properly be guided by Wisconsin's experience. In *McGowan v. Story*, 70 *Wis.* 2d 189, 234 *N. W.* 2d 325 (Sup. Ct. 1975), the court rejected the argument made herein, noting that it is based "upon a fundamental distrust of the jury system, for it assumes that jurors are not faithful to their oath to follow the instructions of the trial judge." 234 *N. W.* 2d at 329. The court concluded that the jury's role is that of fact-finding, not that of applying the law to the facts found. It may not, as plaintiffs' argument implied, manipulate the negligence percentages in order to achieve a result motivated by sympathy. *Ibid.* See also, *Heft and Heft, Comparative Negligence Manual*, § 7.40 (1978).

We approve Wisconsin's approach and hold that in New Jersey the trial court need not charge the jury on the legal effect of its apportionment.

■ Finally, plaintiffs argue that the court erred in refusing to permit their counsel to ask the following questions of the jury during *voir dire*:

1. Are any of you stockholders or employees of any insurance company which is engaged in the casualty insurance business?
2. Are any of you engaged in the general insurance agency business or are any of you an agent for a casualty insurance company?
3. Have any of you ever worked as a claims investigator or insurance adjuster? * * *

This precise question has never been addressed in any reported case in New Jersey. *Voir dire* questioning is, however, regulated generally by statute (*N. J. S. A.* 2A:78–4) and court rule (*R.* 1:8–3(a)), both of which invest the judge with discretion over the extent of inquiry. The trial judge's discretion has been narrowly construed in the interest of effecting its goal of limiting the *voir dire* as much as possible. *State v. Manley,* 54 *N. J.* 259, 282–283 (1969). Even when the judge precludes questions directed at juror bias, no reversible error occurs if the "factual underpinning" of the case suggests that no prejudice resulted. See *State v. Long,* 137 *N. J. Super.* 124, 131 (App. Div. 1975), certif. den. 70 *N. J.* 143 (1976), holding that the preclusion of *voir dire* regarding jurors' racial prejudice is not error absent independent indicia of prejudice.

Other jurisdictions have considered the types of questions involved herein. See generally, Annotation, "Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance," 4 *A. L. R.* 2d 761, 792–816 (1949); 47 *Am. Jur.* 2d, *Jury,* § 333 at 903 (1969).

Plaintiffs urge that *Kiernan v. Van Schaik,* 347 *F.* 2d 775 (3d Cir. 1965), is dispositive. In *Kiernan* plaintiffs sued defendant in federal district court for damages arising from a fall on defendant's sidewalk. A jury verdict was returned

for defendant, after which plaintiffs appealed on the basis of the trial judge's refusal to ask prospective jurors three questions, among others, framed in language virtually identical to those at issue herein. The judge declined to ask the questions and the Court of Appeals reversed, holding:

* * * in order to exercise intelligently his limited number of peremptory challenges and to determine whether ground exists for challenge for cause, a plaintiff in an accident case may make reasonable inquiry whether prospective jurors are or have been connected with the business of investigating or paying accident claims, either as employees, agents or stockholders of insurance companies or claims agencies without suggesting the existence of insurance in the case. An adequate caution should be given by the court to make it clear to the jury that these questions do not imply either that any defendant is insured or that the matter of insurance or lack of insurance is to be considered in reaching a verdict. [at 782]

*Kiernan* has been rejected by Delaware's highest court, *Chavin v. Cope,* 243 *A.* 2d 694, 697 (Sup. Ct. 1968), as well as by some other federal jurisdictions. *Hinkle v. Hampton,* 388 *F.* 2d 141, 144 (10 Cir. 1968); *Socony Mobil Oil Co. v. Taylor,* 383 *F.* 2d 586, 589 (5 Cir. 1967); *Langley v. Turner's Express, Inc.,* 375 *F.* 2d 296, 297 (4 Cir. 1967). We also acknowledge *Kiernan's* approval by two Pennsylvania federal cases. *Milwaukee Gear Co. v. Charles Benjamin, Inc.,* 466 *F.* 2d 588, 593 (3 Cir. 1972); *Hoffman v. Sterling Drug, Inc.,* 374 *F. Supp.* 850, 859 (M. D. Pa. 1974).

To the extent that *Kiernan* precludes trial judge discretion and requires that such questions be asked even where there is no basis for assuming possible bias, we reject it as persuasive authority. The better reasoned approach, in our view, is to leave the decision to the judge's discretion.

In the instant case there was no reason to suspect any juror of bias. Moreover, the judge was partly motivated by his feeling that such questions would tend to let the jury know that defendants were insured. Furthermore, plaintiffs herein have failed to state how they were prejudiced by the restriction of *voir dire.* It was their burden to do so. *State*

*v. Morales,* 116 *N. J. Super.* 538, 542 (App. Div. 1971), certif. den. 60 *N. J.* 140 (1972). Their claim that they cannot know whether any juror was biased unless they are allowed to propound the three questions argues for a fishing expedition type of approach, a result which the New Jersey rule and statute were intended to avoid. Thus we conclude that the judge did not err in refusing to ask the proposed questions.

Affirmed.