Audrey GUZMAN, Nicanor Guzman, Jessica Guzman, a minor, and Steven Guzman, a minor, by their Guardian ad Litem, Plaintiffs-Respondents,†

v.

ST. FRANCIS HOSPITAL, INC., American Continental Insurance Company and Wisconsin Patients Compensation Fund, Defendants-Appellants,

ST. FRANCIS HOSPITAL, INC., Defendant-Third-Party Plaintiff,

James SULLIVAN, M.D., Physicians Insurance Company of Wisconsin, Richard Fitzpatrick, M.D., and Southeastern Emergency Medical Services, S.C., Third-Party Defendants-Appellants,

XY & Z INSURANCE COMPANY, Third-Party Defendant.

Court of Appeals

*No. 98–2710. Oral argument September 5, 2000.—Decided December 19, 2000.*

2001 WI App 21

(Also reported in 623 N.W.2d 776.)

†Petition to review denied.

On behalf of the defendants-appellants, St. Francis Hospital, Inc. and American Continental Insurance Company, the cause was submitted on the briefs of *John A. Nelson* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.*, Milwaukee.

On behalf of the third-party defendant-appellant, Richard Fitzpatrick, M.D., the cause was submitted on the briefs of *Lori Gendelman* and *Jeffrey J.P. Conta* of *Otjen, Van Ert, Lieb & Weir, S.C.*, Milwaukee.

On behalf of the third-party defendant-appellant, James Sullivan, M.D., the cause was submitted on the briefs of *Paul J. Kelly* and *Amy J. Doyle* of *Schellinger & Doyle, S.C.*, Waukesha.

On behalf of the defendant-appellant, Wisconsin Patients Compensation Fund, the cause was submitted on the briefs of *Steven J. Caulum* of *Bell, Gierhart & Moore, S.C.*, Madison and *William H. Levit, Jr.* and *Michael B. Apfeld* of *Godfrey & Kahn, S.C.*, Milwaukee. There was oral argument by *Michael B. Apfeld*.

On behalf of the third-party defendant-appellant, Southeastern Emergency Medical Services, S.C., the cause was submitted on the briefs of *Mary Lee Ratzel, Peter F. Mullaney* and *Sherry A. Knutson* of *Peterson, Johnson & Murray, S.C.*, Milwaukee. There was oral argument by *John S. Skilton* of *Foley & Lardner*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Ted M. Warshafsky* of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee and *Edward E. Robinson* of *Cannon & Dunphy*, Brookfield. There was oral argument by *Ted M. Warshafsky*.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. Audrey Guzman was seriously injured by what she claims was the negligence of the health-care providers named in the caption. The trial court held in a non-final order that a cap imposed by the legislature on the recovery of noneconomic damages in medical malpractice actions within the scope of WIS. STAT. Ch. 655 was unconstitutional. The health-care providers, their respective insurance carriers, and the Wisconsin Patients Compensation Fund appeal.[1] We reverse.

---

[1] *Amicus Curia* briefs have been filed by: Association of Trial Lawyers of America and The Wisconsin Academy of Trial Lawyers and Hannan.

## I.

¶ 2.    The cap on the recovery of noneconomic damages in health-care-provider malpractice cases involves the application of several statutes. WISCONSIN STAT. § 655.017 provides:

> The amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider if the act or omission occurs on or after May 25, 1995, and for acts or omissions of an employe of a health care provider, acting within the scope of his or her employment and providing health care services, for acts or omissions occurring on or after May 25, 1995, is subject to the limits under s. 893.55(4)(d) and (f).

The limitations referred to in § 655.017 are as follows—first WIS. STAT. § 893.55(4)(d):

> The limit on total noneconomic damages for each occurrence under par. (b) on or after May 25, 1995, shall be $350,000 and shall be adjusted by the director of state courts to reflect changes in the consumer price index for all urban consumers, U.S. city average, as determined by the U.S. department of labor, at least annually thereafter, with the adjusted limit to apply to awards subsequent to such adjustments.

WISCONSIN STAT. § 893.55(4)(f) provides:

> Notwithstanding the limits on noneconomic damages under this subsection, damages recoverable against health care providers and an employe of a health care provider, acting within the scope of his or her employment and providing health care services, for wrongful death are subject to the limit under s. 895.04(4). If damages in excess of the limit

565

under s. 895.04(4) are found, the court shall make any reduction required under s. 895.045 and shall award the lesser of the reduced amount or the limit under s. 895.04(4).[2]

WISCONSIN STAT. § 895.045 is Wisconsin's comparative negligence statute. As material here, it provides:

**(1)** COMPARATIVE NEGLIGENCE. Contributory negligence does not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person recovering. The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

---

[2] WISCONSIN STAT. § 895.04(4) is the limitation imposed by the legislature on wrongful-death actions involving the recovery for loss of society and companionship of a spouse, parent, or child. It provides:

Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

WISCONSIN STAT. § 893.55(4)(c) requires an assessment of noneconomic damages by either the judge or the jury without regard to the cap, with the subsequently entered judgment conforming to the cap's limits:

> A court in an action tried without a jury shall make a finding as to noneconomic damages without regard to the limit under par. (d). If noneconomic damages in excess of the limit are found, the court shall make any reduction required under s. 895.045 and shall award as noneconomic damages the lesser of the reduced amount or the limit. If an action is before a jury, the jury shall make a finding as to noneconomic damages without regard to the limit under par. (d). If the jury finds that noneconomic damages exceed the limit, the jury shall make any reduction required under s. 895.045 and the court shall award as noneconomic damages the lesser of the reduced amount or the limit.

¶ 3.  The trial court held that the legislature could not constitutionally limit the amount of noneconomic damages that a person injured by a health-care provider covered by WIS. STAT. ch. 655 can recover. It ruled that the cap violated both the right to a trial by jury recognized by the Wisconsin constitution, and the separation of powers between the judicial and legislative branches.

## II.

¶ 4.  Whether a statute is constitutional is decided by an appellate court *de novo*. *See Aicher v. Wisconsin Patients Compensation Fund*, 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 110, 613 N.W.2d 849, 857. Statutes are assumed to be constitutional unless shown not to be. We do not write on a clear slate:

Statutes are presumptively constitutional. The court indulges every presumption to sustain the law if at all possible, and if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality.

To overcome this strong presumption, the party challenging a statute's constitutionality must demonstrate that the statute is unconstitutional beyond a reasonable doubt. It is not sufficient for the challenging party merely to establish doubt about a statute's constitutionality, and it is not enough to establish that a statute probably is unconstitutional.

The presumption of statutory constitutionality is the product of our recognition that the judiciary is not positioned to make the economic, social, and political decisions that fall within the province of the legislature. The duty of the court is only to determine if the legislation clearly and beyond doubt offends a provision of the state constitution that specifically circumscribes legislative action.

*Aicher*, 2000 WI 98 at ¶ 18–20 (internal citations omitted).[3]

---

[3] This formulation of the deference given to the legislature reflected by the phrase "proof beyond a reasonable doubt" is old. *See* James B. Thayer, THE ORIGIN AND SCOPE OF THE AMERICAN DOCTRINE OF CONSTITUTIONAL LAW, 7 HARV. L. REV. 129, 140–152 (1893); *Ogden v. Saunders*, 12 Wheat. (25 U.S. ) 213, 270 (1827) (Washington, J.) ("It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favour of its validity, until its violation of the constitution is proved beyond all reasonable doubt. This has always been the language of this Court, when that subject has called for its decision; and I know that it expresses the honest sentiments of each and every member of this bench. I am perfectly satisfied that it is entertained by those of them from whom it is the misfortune of the majority of

¶ 5. The legislature has made a policy determination that the efficient and effective provision of

the Court to differ on the present occasion, and that they feel no reasonable doubt of the correctness of the conclusion to which their best judgment has conducted them."); *cf. Adkins v. Children's Hosp. of the District of Columbia*, 261 U.S. 525, 544 (1923) ("This court, by an unbroken line of decisions from Chief Justice Marshall to the present day, has steadily adhered to the rule that every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt. But, if by clear and indubitable demonstration a statute be opposed to the Constitution, we have no choice but to say so.") *overruled in part by West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937). Nevertheless, the language carries with it unfortunate echoes of an *evidentiary* burden of proof, most common in criminal cases, even though whether a statute is constitutional is an issue of law, not fact. The "ultimate degree of certainty, or firmness of conviction, in a conclusion resolving a constitutional challenge does not result from the evidence or 'proof,' presented. It results from the force, or persuasiveness, of legal argument." *United Air Lines, Inc. v. City and County of Denver*, 973 P.2d 647, 658 (Col. Ct. App. 1998) (Briggs, J. concurring).

Even as an evidentiary standard, different judges have different views as to what is required for proof to be "beyond a reasonable doubt." For example, a survey of federal trial judges in the Eastern District of New York discovered that their estimates of what, in a probabilistic sense, was required to satisfy the "beyond a reasonable doubt standard" "ranged from 76 to 90 percent, with 85 percent the modal response." *See United States v. Shonubi*, 895 F. Supp. 460, 471 (E.D.N.Y. 1995) (survey reported in *United States v. Fatico*, 458 F. Supp. 388, 410 (E.D.N.Y. 1978), *aff'd on other grounds*, 603 F.2d 1053 (2d Cir. 1979)), *sentence vacated on other grounds*, 103 F.3d 1085 (2d Cir. 1997). Indeed, *Fatico* reports on another survey of judges where almost one-third of those responding "put 'beyond a reasonable doubt' at 100%." *Fatico*, 458 F. Supp. at 410. Moreover, *any* standard, irrespective of how high, can be applied errone-

health care in Wisconsin requires not only a restructuring of medical-malpractice law in this state, *see State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 508–509, 261 N.W.2d 434, 442 (1978), but also that "[t]aming the costs of medical malpractice" by limiting the right of patients injured by medical malpractice to recover for their injuries "ensur[es] access to affordable health care" for all, and that this is a "legitimate legislative

ously. *Cf. State ex rel. Unnamed Petitioners v. Connors*, 136 Wis. 2d 118, 143, 401 N.W.2d 782, 792 (1987) ("Because [WIS. STAT. § 968.02(3)], without question, authorizes the complete usurpation or substitution of an important executive function by the judiciary, the statute is unconstitutional beyond a reasonable doubt."); *State v. Unnamed Defendant*, 150 Wis. 2d 352, 358, 441 N.W.2d 696, 698 (1989) (*Connors* wrong; WIS. STAT. § 968.02(3) constitutional).

The United States Supreme Court has apparently abandoned the "beyond a reasonable doubt" terminology in favor of a less evidentiary-sounding test—one that also recognizes the deference due to the legislature. *See Walters v. National Ass'n. of Radiation Survivors*, 473 U.S. 305, 319 (1985) ("Judging the constitutionality of an Act of Congress is properly considered ' "the gravest and most delicate duty that this Court is called upon to perform,' " and we begin our analysis here with no less deference than we customarily must pay to the duly enacted and carefully considered decision of a coequal and representative branch of our Government.") (internal citations deleted). Indeed, this language is quite similar to the recognition in *Aicher v. Wisconsin Patients Compensation Fund*, 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 110–111, 613 N.W.2d 849, 857, "that the judiciary is not positioned to make the economic, social, and political decisions that fall within the province of the legislature," and that a statute is constitutional unless it "clearly and beyond doubt offends a provision of the state constitution that specifically circumscribes legislative action." *Id.*, 2000 WI 98 at ¶ 20. In any event, we apply the test as enunciated, most recently, by *Aicher*.

objective[ ]." *Aicher*, 2000 WI 98 at ¶ 78 (upholding statute of repose that barred right to file suit before injured patient aware of injury). Although the Guzmans dispute that a health-care crisis justified these legislative responses, this assessment is for the legislature and not for us: "Whether the perception of a malpractice crisis was inflated or illusory makes little difference because the perceived crisis led the legislature to make a policy determination about the costs of health care." *Id.*, 2000 WI 98 at ¶ 63; *see also Czapinski v. St. Francis Hospital, Inc.*, 2000 WI 80, ¶ 31, 236 Wis. 2d 316, 336, 613 N.W.2d 120, 131, ("medical malpractice actions are substantially distinct from other tort actions"). Additionally, counsel for the Guzmans candidly conceded at oral argument that noneconomic damages functioned essentially as a pool from which the attorney's fees of personal-injury plaintiffs could be paid, thus preserving—to a greater or lesser extent—the use of an award of economic damages to make that plaintiff whole. Looked at in this light, permitting (and, here, limiting) an award of noneconomic damages represents a policy decision that personal-injury plaintiffs, unlike plaintiffs in, let's say, commercial disputes, are entitled to a modification of the American Rule, which generally makes each side in a lawsuit responsible for its own attorney's fees. *See Wisconsin Retired Teachers Association, Inc V. Employe [sic] Trust Funds Bd.*, 207 Wis. 2d 1, 36, 558 N.W.2d 83, 98 (1997) ("Generally, a court may require a losing litigant to reimburse the prevailing party's attorney fees only when expressly authorized by statute or contract."). In our view, the policy decision to permit this form of fee-shifting, and to limit the extent of such fee-shifting, is also within the ambit of legislative authority.

¶ 6. As noted, the trial court held that the cap was not constitutional for two reasons. First, the trial court ruled that the cap violated WIS. CONST. art. I, § 5, which, as material here, provides: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Second, the trial court also held that the cap violated the separation between the legislative and judicial branches. Additionally, the Guzmans argue that: 1) the cap violates WIS. CONST. art. I, § 9 ("Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."); 2) the cap violates WIS. CONST. art. I, § 1, which guarantees to every person the equal protection of the laws, *see Aicher*, 2000 WI 98, ¶ 55 n.14 (Article I, § 1 of the Wisconsin Constitution and the Fourteenth Amendment, § 1 of the United States Constitution are given the "same interpretation"); and 3) the cap violates substantive due process. We discuss these matters in turn.[4]

---

[4] Both the Guzmans and the defendants refer us to many decisions by courts from other jurisdictions. Generally speaking, decisions from other jurisdictions can be helpful to an analysis where there is no controlling Wisconsin precedent. *See United Parcel Service Co. v. Wisconsin Department of Revenue*, 204 Wis. 2d 63, 76–77, 553 N.W.2d 861, 866–867 (Ct. App. 1996). That is not the situation here; Wisconsin precedent not only illuminates our analysis, it controls it. *Ibid.* Moreover, circumstances in other states vary—various influences affect their courts. *See, e.g.,* SHERMAN JOYCE & VICTOR SCHWARTZ, WHY NO TORT REFORM? FOLLOW THE MONEY, THE WALL STREET JOURNAL A26 (September 21, 2000) (trial-lawyer and business groups

## A. *Jury trial right.*

¶ 7.   The Guzmans argue that the legislature may not, in their words, "substitute its judgment for that of the jury as to the proper amount of damages owing to a victim of medical malpractice." (Capitalization omitted.) They contend that because medical-malpractice actions were part of the common law when the Wisconsin constitution was adopted in 1848, and that those actions encompassed the recovery of noneconomic damages, the legislature is powerless to trench a jury's right to award as much noneconomic damages as the jury might see fit. Although neither the Guzmans nor the defendants have directed us to any authority one way or the other concerning the recovery of noneconomic damages in Wisconsin before 1848, the issue is not material because the constitution specifically empowers the legislature to *modify* the common law, and indeed, to discontinue common-law causes of action or remedies: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state *until altered or suspended by the legislature.*" WIS. CONST. art. XIV, § 13 (emphasis added).

¶ 8.   Article XIV, § 13 is a powerful delegation of authority to the legislature by the constitution, and recognizes, as does *Aicher*, that it is the legislature's function to establish the parameters of policy for Wis-

seek to influence court decisions by making large campaign contributions to judicial races); MARY ALICE ROBBINS, TEXAS CHIEF JUSTICE AND SENATOR CALL FOR SUMMIT ON JUDICIAL ELECTION PROBLEMS http://biz.yahoo.com/law/000919/70734–4.html (September 19, 2000) (reprinting article from *Texas Lawyer*) (many judicial races are "fueled by special-interest dollars").

consin, consistent with the changing needs of our society. *See Aicher*, 2000 WI 98, ¶¶ 21, 27, 46, 50, 51, 52, 53, 54, 62, 63, 68, 74 (legislature may, for reasons of public policy that are within its province, abolish a claim before the injured party is aware of his or her injury). Once the legislature establishes the law, both courts and juries must follow it, unless, obviously, the law violates *a specific provision* of the constitution. *See id.*, 2000 WI 98, ¶ 20 (legislation constitutional unless it "clearly and beyond doubt offends a provision of the state constitution that specifically circumscribes legislative action."); *cf. State v. Bjerkaas*, 163 Wis. 2d 949, 959–963, 472 N.W.2d 615, 619–620 (Ct. App. 1991) (jurors must follow the law; no right to an instruction on nullification in criminal case).

¶ 9.   The Guzmans point to the "right to jury" clause, WIS. CONST. art. I, § 5, as the specific provision they contend is violated by the cap on noneconomic damages. But this argument begs the question because all plaintiffs in malpractice actions under WIS. STAT. ch. 655 retain their "right to" a trial by a "jury"—a cap on noneconomic damages does not change this. The real question is whether the legislature can set the rules that the jury must follow, and limit the amount of noneconomic damages that can be entered on a jury verdict. This is where the Guzmans' argument falters—*no provision* of the Wisconsin constitution says that the legislature cannot. Indeed, the legislature has frequently deprived juries in Wisconsin of the right to set the amount that an injured plaintiff will receive. The most obvious example is, of course, WIS. STAT. § 895.045(1), the comparative negligence statute quoted in full earlier, which prevents an injured party from recovering *anything*—both economic and noneconomic damages—if his or her negligence

exceeds the negligence of the person sought to be held liable. And this limitation on the amount of damages that an injured party can recover—irrespective of the amount of damages awarded by the jury—applies in medical-malpractice cases as well as other negligence actions.

¶ 10.  Wisconsin has long recognized that "[i]t is the duty of the jury to find the facts and the duty and domain of the court to determine the legal rights of the parties after the return of the verdict." *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 482, 387 N.W.2d 751, 759, (1986). Moreover, WIS. CONST. art. I, § 5, was patterned after the Seventh Amendment to the United States Constitution:

> The right to a jury trial in civil cases that is guaranteed by Article I, § 5 of the Wisconsin Constitution is substantially similar to that right guaranteed by the Seventh Amendment to the United States Constitution ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."). The Seventh Amendment jury-trial right does not apply to the states. Nevertheless, we may be guided by the federal cases interpreting that provision.

*Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 225–226, 556 N.W.2d 326, 333 (Ct. App. 1996) (internal citations omitted). Contrary to the assumption of the trial court, the Guzmans, and the dissent, the Seventh Amendment was designed to set the boundaries between *judge and jury—not between the legislature's power to make the law and the jury's right to find facts. See Baltimore & Carolina Line, Inc. v. Redman 295*

575

*U.S. 654, 657 (1935) ("The aim of the amendment . . . is to preserve the substance of the common-law right of trial by jury, . . . and particularly to retain the common-law distinction between the province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court."); see also Edith Guild Henderson,* THE BACKGROUND OF THE SEVENTH AMENDMENT, *80* HARV. L. REV. *289, 291–299 (1966). The trial court, the Guzmans, and the dissent infuse the inviolate right to a jury trial found in our constitution with a meaning that those who wrote the clause for the federal constitution and those who imported it into the Wisconsin constitution never intended. There is peril in using words or phrases with special historical meaning without comprehending that history. See State v. Unnamed Defendant, 150 Wis. 2d. 352, 358, 441 N.W.2d 696, 698 (1989), overruling State ex. rel. Unnamed Petitioners v. Connors, 136 Wis. 2d 118, 401 N.W.2d 782 (1987) (misreading constitutional functions of the judiciary and of the district attorney).*

¶ 11.   The law under the Wisconsin Constitution has always been that the parameters of legal rights may properly be set by the legislature. Thus, as explained by *McGowan v. Story*, 70 Wis. 2d 189, 197–199, 234 N.W.2d 325, 329–330 (1975), in the context of the comparative-negligence statute, which limits the ultimate recovery of a plaintiff who is contributorily negligent, the jury's "function in a negligence case is factfinding only," and the judge must apply the law as enacted by the legislature even though this may frustrate the jury's intent to award a certain

sum as damages. *Id.*, 70 Wis. 2d at 197–199, 234 N.W.2d at 329–330 ("not [jury's] role to usurp the legislative function"). The same rationale applies to the cap on noneconomic damages. The Guzmans argue in their brief:

> The suggestion is that, as long as the statute does not interfere with the actual fact-finding process, the right to trial by jury is not violated. This is ludicrous. As [the trial court] correctly observed, for these argument to stand:
>
> > Plaintiffs' guaranteed day in court would be merely going through the motions. . .
>
> The right to trial by jury would be rendered nothing more than a mirage if the jury's determinations, once made, could simply go unheeded by the legislature.

This contention ignores the fact that this "go unheeded" result happens *every time* a jury awards damages to an injured plaintiff but determines that he or she is more negligent than "the person against whom recovery is sought" under WIS. STAT. § 895.045(1). In such a case, the damages awarded by the jury, most likely with the expectation that the plaintiff will get a percentage of those damages, will vanish like a puff of steamy breath on a cold winter day. *See McGowen*, 70 Wis. 2d at 197, 234 N.W.2d at 329 (jury may not be told of effect of answer to comparative-negligence question even though "some juries, misinformed or ignorant of the effect of their answers, will make findings which they believe will 'do justice,' but which do not in law have the result intended").

¶ 12.  Significantly, *Aicher* upheld the right of the legislature to deprive a person injured by medical-malpractice of *any* right of recovery if that person brings suit after expiration of the five-year statute of repose, WIS. STAT. § 893.55(1)(b), even though he or she might not have discovered the injury until after the repose period had passed. There can be no more drastic deprivation of the right to have one's suit for medical-malpractice damages tried by a jury than what the trial court in *Aicher* characterized as closing the doors of the courtroom before the child in that case " 'even discovered she was injured.' " *Id.*, 2000 WI at ¶ 13. Compared to that total denial, the cap on noneconomic damages here is *de minimis*. Of course, *Aicher* did not address whether the statute of repose violated WIS. CONST. art. I, § 5. Nevertheless, applying *Aicher's* underlying rationale, the cap is not an infringement on the "right of trial by jury" declared by that section to be "inviolate"; WIS. STAT. ch. 655 plaintiffs can still have health-care-provider liability decided by a jury, which will also assess the plaintiffs' damages. In essence, all the legislature has done is to "suspend" pursuant to the authority granted to it by WIS. CONST. art. XIV, § 13, a cause of action in medical-malpractice actions under WIS. STAT. ch. 655 for noneconomic damages exceeding the statutory cap. This it has every right to do.

B.  *Separation of powers.*

¶ 13.  The concept of separation of powers recognizes the " 'division of governmental powers among the judicial, legislative, and executive branches.' " *Barland v. Eau Claire County*, 216 Wis. 2d 560, 572, 575 N.W.2d 691, 696 (1998) (quoted source omitted). The trial court

held that the cap on noneconomic damages violates the separation of powers because the cap, in the trial court's view, usurps the judiciary's power to order a remittitur if, in a trial judge's assessment of the evidence, a jury's verdict is excessive. *See Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 87–92, 102 N.W.2d 393, 398–400 (1960) (trial courts have power to order remittitur). But the statute setting a cap on noneconomic damages does not interfere with this right; a trial court retains the discretion under *Powers* to order a remittitur.[5] Thus, insofar as the cap is seen as a form of remittitur (a syllogism that we do not accept) it represents a *sharing* of powers between the branches, which has always been recognized in this state as an appropriate accommodation. *See State v. Holmes*, 106 Wis. 2d 31, 43, 315 N.W.2d 703, 709 (1981) ("The doctrine of separation of powers does not demand a strict, complete, absolute, scientific division of functions between the three branches of government. The separation of powers doctrine states the principle of shared, rather than completely separated powers. The doctrine envi-

---

[5] The Guzmans point out that a court-imposed rule permitting remittitur does not violate WIS. CONST. art. I, § 5 ("right of trial by jury shall remain inviolate") "because that power on the part of the court was a part of the trial by jury which the Constitution declared shall remain inviolate," *see Campbell v. Sutliff*, 193 Wis. 370, 378, 214 N.W. 374, 377 (1927) *overruled in part, Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 92, 102 N.W.2d 393, 400 (1960). This case, however, deals not with the power of a trial court to order a remittitur but with that of the legislature to determine that a limit on what a WIS. STAT. ch. 655 plaintiff can recover as noneconomic damages is warranted by social conditions. As we have seen, the constitution specifically grants to the legislature the power to modify or suspend entirely the common law that was in force in Wisconsin prior to the adoption of the constitution in 1848.

sions a government of separated branches sharing certain powers."). In any event, as *Aicher* teaches, we must give substantial deference to the legislature "to make the economic, social, and political decisions" within its province, 2000 WI 98 at ¶ 20, and this is especially true in the medical-malpractice area. *See id.*, 2000 WI 98 at ¶ 63. The trial court ignored this command.

¶ 14.   The Guzmans also contend that WIS. STAT. § 893.55(4)(c) "prohibits" a trial court "from advising the jury of the existence of the noneconomic damage cap," and argues that this violates "the judicial policy enunciated in *Peot v. Ferraro*," 83 Wis. 2d 727, 266 N.W.2d 586 (1978). We disagree.

■■

¶ 15.   As we have seen, the statute establishes the following procedure in cases tried to a jury:

> If an action is before a jury, the jury shall make a finding as to noneconomic damages without regard to the limit under par. (d). If the jury finds that noneconomic damages exceed the limit, the jury shall make any reduction required under s. 895.045 and the court shall award as noneconomic damages the lesser of the reduced amount or the limit.

WIS. STAT. § 893.55(4)(c). The steps are thus: 1) the jury makes a finding of what noneconomic damages are warranted by the facts of the case; 2) if these damages exceed the cap, the jury apportions the comparative negligence of the parties under WIS. STAT. § 895.045; 3) the trial court then awards "as noneconomic damages the lesser of the reduced amount or the limit." There are several ways for a trial court to comply with this procedure—some of these ways would advise the jury of the cap; others would not. Formulation of special-

verdict questions are relegated to the trial court's discretion. *See State v. Herriges*, 155 Wis. 2d 297, 300, 455 N.W.2d 635, 637 (Ct. App. 1990). Under established Wisconsin law, however, the jury should ordinarily *not* be told the effect of its verdict. *See McGowan v. Story*, 70 Wis. 2d at 197–199, 234 N.W.2d at 329–330; *Kobelinski v. Milwaukee and Suburban Transp. Corp.*, 56 Wis. 2d 504, 520, 202 N.W.2d 415, 425 (1972). *Peot* is not to the contrary.

¶ 16.   *Peot* concerned application of the statutory cap on the recovery for the loss of a child's society and companionship by parents suing someone responsible for the child's death. *Peot*, 83 Wis. 2d at 729, 266 N.W.2d at 587. At trial, the defendant's lawyer urged the jury to award to the plaintiffs for the loss of the society and companionship of their son damages exceeding the cap. *Id.*, 83 Wis. 2d at 740, 266 N.W.2d at 592. In light of this attempt to have the jury place substantial damages in an award subject to a cap, thereby reducing what the jury would be likely to award as damages for injury subject to a higher cap, *Peot* held that the jury should be told of the cap. *Id.*, 83 Wis. 2d at 746, 266 N.W.2d at 595 ("We believe that this potential for misleading the jury can be minimized by the trial court's instructing the jury that the legislature has imposed a limitation on the recovery of damages for loss of society and companionship and by the trial court's telling the jury of the specific dollar limitation prescribed.").

¶ 17.   There is no evidence in the record here that the defendants in this case would seek to have the jury load-up on noneconomic damages with the hope that this would bleed money from its award of economic damages so as to justify an instruction that would cor-

rect the type of false impression extant in *Peot.* Accordingly, and absent such an attempt, the trial court would be justified in not telling the jury that any award of noneconomic damages is limited to the statutory cap. Thus, the legislature's provision that "the jury shall make a finding as to noneconomic damages without regard to the limit" set by the cap does not violate the separation of powers, especially because it merely replicates the general court-devised rule.

C. *Remedy for wrongs.*

¶ 18. Article I, § 9 of the Wisconsin Constitution provides:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obligated to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

The Guzmans argue that the cap violates this provision. We disagree. Section 9 "confers no legal rights." *Aicher*, 2000 WI 98 at ¶ 43. Rather, it preserves access to the courts for redress of rights as those rights may either be created by the legislature, or, of rights recognized by the common law, and not modified or suspended by it under the authority granted to it by WIS. CONST. art. XIV, § 13. *See Aicher*, 2000 WI 98 ¶¶ 43–54: "The right-to-remedy clause thus preserves the right 'to obtain justice on the basis of the law as it in fact exists.' " *Id.*, 2000 WI 98 at ¶ 43 (quoted source omitted). If a statute of repose, which can bar the courthouse doors to an injured patient before the patient's

malpractice-caused injury has even manifested itself, is not a deprivation of the remedy-for-wrongs clause despite the fact that "[c]ourts may shudder at the unfairness," *see id.*, 2000 WI 98 at ¶ 45, then, certainly, putting a ceiling or cap on the recovery of noneconomic damages does not violate the clause. *See State v. Cunningham*, 144 Wis. 2d 272, 283, 423 N.W.2d 862, 866 (1988) (*a fortiori* analysis of different fact scenarios is an appropriate way to test constitutionality).

D. *Equal protection.*

¶ 19.  The Guzmans' contention that the cap on noneconomic damages violates their right to equal protection has several layers—they argue that the cap does all of the following: 1) "creates two classes of tort litigation plaintiffs" (those injured by medical malpractice of a ch. 655 health-care provider; those injured by the negligence of a health-care provider that is not medical malpractice); 2) creates two classes of victims (those whose total noneconomic damages are less than the cap; those whose damages exceed the cap); 3) creates two classes of medical-malpractice tortfeasors (giving to those who have caused the most noneconomic damage a greater measure of partial immunity from having to fully compensate their victims); 4) penalizes those injured by medical-malpractice negligence who will have to share noneconomic damages with a spouse or minor children because the cap applies to each occurrence rather than to each plaintiff. In asking us to assess these imbricated arguments, the Guzmans contend that the cap must pass so-called "strict scrutiny" review, and that, therefore, the presumption of constitutionality does not apply. *See State v. McKenzie*, 151 Wis. 2d 775, 779, 446 N.W.2d 77, 78 (Ct. App. 1989) (statute passes constitutional muster against an equal-

protection challenge if "a rational basis exists to support the classification, unless the statute impinges on a fundamental right or creates a classification based on a suspect criterion"). Here, too, the slate is not clear.

¶ 20.   Access to the courts to pursue redress for injuries is not the type of "fundamental right" to which the strict-scrutiny test applies. *Aicher*, 2000 WI 98 at ¶ 56. Additionally, classifications created by the ch. 655 scheme are not based on suspect criteria. *See Czapinski*, 2000 WI 80 at ¶ 28; *Strykowski*, 81 Wis. 2d at 507, 261 N.W.2d at 442; *see also Miller v. Kretz*, 191 Wis. 2d 573, 579, 531 N.W.2d 93, 96 (Ct. App. 1995) (medical malpractice claim "does not involve a fundamental right or suspect criterion"). Thus, the rational-basis test applies. *See id.*, 2000 WI 98 at ¶ 56; *Miller*, 191 Wis. 2d at 579, 531 N.W.2d at 96. "Under the rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the provision." *Aicher*, 2000 WI 98 at ¶ 57. Moreover, "[i]t is not our role to determine the wisdom or rationale underpinning a particular legislative pronouncement." *Id.*, 2000 WI 98 at ¶ 57. We "must sustain a statute unless we find that "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest."" *Ibid.*

¶ 21.   Although the rational-basis test implicates an analysis of five factors, *see id.*, 2000 WI 98 at ¶ 58, the Guzmans do not address any of the five factors.[6]

---

[6] The five factors are:

(1)   All classification[s] must be based upon substantial distinctions which make one class really different from another.

(2)   The classification adopted must be germane to the purpose of the law.

Rather, they rest on their assertion (flawed, as noted above) that a strict-scrutiny test applies, contending that the legislature missed the boat in believing that the cap served a legitimate governmental interest. But, as we have seen, the legislature has broad berth in deciding matters of public policy, and that doctrine also applies when a statute is challenged on equal-protection grounds. *See id.*, 200 WI 98 at ¶ 57 ("It is not our role to determine the wisdom or rationale underpinning a particular legislative pronouncement."). The Guzmans' silence on the rational-basis test is a concession that the cap passes that test. *See Reiman Assocs. v. R/A Advertising*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981); *see also Czapinski*, 2000 WI 80 at ¶ 9, n.8 (issue not argued will not be addressed).

### E. *Substantive Due Process.*

¶ 22. Finally, the Guzmans argue that what they call the "arbitrary" cap violates their right to substantive due process. As recently noted in *Dowhower v.*

---

(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within a class].

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Aicher*, 2000 WI 98 at ¶ 58 (quoted sources omitted; brackets by *Aicher*). The Guzmans do not address any of these criteria; accordingly, neither do we. *See Barakat v. Department of Health & Soc. Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 399 (Ct. App. 1995) (appellate court need not consider amorphous and insufficiently developed arguments).

*West Bend Mut. Ins. Co.*, 2000 WI 73 ¶ 13, 236 Wis. 2d 113, 120, 613 N.W.2d 557, 560–561, the due-process clauses in both the federal and Wisconsin constitutions guarantee " 'more than fair process,' " and have " 'a substantive sphere as well, "barring certain government actions regardless of the fairness of the procedures used to implement them." ' " (quoted sources omitted). The Guzmans claim that "substantive due process" required the legislature to give injured chapter 655 plaintiffs a "quid pro quo" in return for taking away the right to recover more than $350,000 (or the cap as adjusted as required by the statute) in noneconomic damages. We disagree.

¶ 23. *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995), held that retroactive application of a cap on noneconomic damages with respect to a medical-malpractice claim that accrued before the cap's effective date violated substantive due process. *Id.*, 192 Wis. 2d at 201, 531 N.W.2d at 88–89. "In Wisconsin, a cause of action is a vested property right only if it has accrued." *Aicher*, 2000 WI 98 at ¶ 82; *see also Martin*, 192 Wis. 2d at 206, 531 N.W.2d at 91 ("recovery, when set by a statute is fixed on the date of injury"). *Martin* applied a heightened standard of review because the statute modified a right that had vested when the Martins' claims accrued, *see Martin*, 192 Wis. 2d at 201, 531 N.W.2d at 88–89, (heightened scrutiny appropriate when vested right affected), and concluded that the retroactive application of the cap took from the Martins their then-existing "substantive right to unlimited damages." *Martin*, 192 Wis. 2d at 206, 531 N.W.2d at 91 (footnote omitted). *But cf. Neiman v. American National Property & Cas. Co.*, 2000 WI 83, ¶¶ 9, 22–23, 236 Wis. 2d 411, 419, 425, 613 N.W.2d 160, 163, 166 ("rational basis test is applied when the court reviews

the constitutionality of retroactive economic legislation") (retroactive application of increase in wrongful-death damages unconstitutional because increase "unfairly overturns settled expectations" without concomitant "public purpose" that "outweighs the private interests it overturns").

¶ 24.  The Guzmans' claim at issue here accrued *after* the cap was enacted. Thus, unlike the situation in *Martin*, the cap did not modify any "substantive right to unlimited damages." *See Martin*, 192 Wis. 2d at 206, 531 N.W.2d at 91 (footnote omitted). Accordingly, a heightened-scrutiny standard of review is not applicable. Rather, the applicable rule is that a statute "does not violate substantive due process if it bears a rational relationship to the underlying legislative purpose." *Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 889, 517 N.W.2d 135, 140 (1994). The cap does not deprive the Guzmans of substantive due process.

¶ 25.  As we have seen, the legislature has determined that the efficient and effective provision of health care in Wisconsin requires not only a restructuring of medical-malpractice law in this state, *see State ex rel. Strykowski*, 81 Wis. 2d at 508, 261 N.W.2d at 442, but also significant limits on the time within which claims must be filed, *Aicher*. As noted earlier, there is a rational relationship between the prospective application of the cap on the recovery of noneconomic damages (affecting all plaintiffs from the effective date of the cap forward) and the legislature's goal of preserving health-care services in Wisconsin. Reduced payouts to injured plaintiffs that will result from the prospective application of the cap contrasts with the minimal reductions that would have flown from retroactive application (affecting the few plaintiffs whose claim

arose before the cap's effective date). *See Martin*, 192 Wis. 2d at 203–205, 531 N.W.2d at 89–90. Thus, the prospective application of a cap on the recovery of noneconomic damages carries with it a far greater savings to insurers and the Fund than did the situation in *Martin*, with, as determined by the legislature, concomitant benefits to the provision of health care in Wisconsin. Moreover, contrary to the Guzmans' contention, the legislature did not have to give to those affected by the cap a *quid pro quo*. *See State ex rel. Strykowski*, 81 Wis. 2d at 519–520, 261 N.W.2d at 447–448 (legislative *quid pro quo* not required for limits on recovery to pass due-process muster). Given the deference that we owe to the legislative judgment in this area, we conclude that the Guzmans' substantive due-process rights have not been impaired.

*By the Court.*—Order reversed.

¶ 26.  CURLEY, J. *(concurring)*. I reluctantly join the majority decision. My reluctance stems from my belief that the statute barely passes constitutional muster and, were I able as a court of appeals judge to overturn legal precedent that supports the legislature's action, I would have found the caps on non-economic medical malpractice damages unconstitutional.

¶ 27.  I write to discuss two problems caused by non-economic damages caps which were raised in the briefs and alluded to during oral argument.

¶ 28.  First, at present, the long-term effects of medical malpractice caps on non-economic damages are unknown. What is known, however, is that the cap on non-economic damages adversely impacts those injured parties who can least afford to be deprived of their compensation. Currently, the remedy harms

medical malpractice victims with the lowest earning capacities, with the largest families (who must share the non-economic damages award with the victim), and/or with the most pain and suffering. In my opinion it is terribly unfair to short-change those with the lowest earning capacity, the biggest families and the most pain and suffering in order to remedy the perceived medical malpractice crisis in Wisconsin. If, indeed, a remedy is necessary, certainly a fairer remedy can be fashioned that achieves the goal of reducing medical malpractice costs.

¶ 29.  Second, the majority opinion states that the legislature's act of capping non-economic damages in medical malpractice cases may have been done to shift the payment of part of the attorney fees back to the victim. In this regard, the legislature's decision in setting caps may have far-reaching unintended consequences. Large numbers of those injured at the hands of medical professionals may be prevented from seeking redress at all! This is so because capable attorneys are refusing to handle some medical malpractice cases because of the caps. The end result may be that entire classes of legitimate victims of medical negligence will be foreclosed from obtaining any relief for want of a competent attorney to handle their cases.

¶ 30.  In Wisconsin, we are fortunate to have many excellent, highly skilled and competent doctors. However, not all doctors are created equal, and even the excellent doctor can make the exceptional tragic mistake. The right to sue and obtain compensation for medical negligence in Wisconsin has been part of our jurisprudence for some time. Despite the longstanding availability of medical malpractice suits, there are not large numbers of medical malpractice cases. This is because successful medical malpractice suits are diffi-

cult. They require lawyers to invest substantial time and money in the action. Voluminous medical records must be reviewed. Expert witnesses must be located and retained. Often the trials are lengthy and the outcomes uncertain—as more medical malpractice cases are lost than are won.

¶ 31. Occasionally media attention has focused on the infrequent large attorney fee recouped in a medical malpractice case through the operation of a contingency fee agreement. These articles lead the public to view medical malpractice attorney fee awards as undeserved windfalls. But behind each attorney fee award there stands a seriously injured victim who had to suffer a considerable wage loss, incur tremendous past and future medical expenses, or endure massive pain and suffering in order to be awarded such significant damages. Although an argument can be made that contingency fees are unfair—after all, by their operation, injured persons are never made whole because they are always obligated to pay their attorney a percentage of their award—it is currently the *only* way victims of medical negligence can secure legal counsel in these cases. I believe it would be poor public policy to continue capping non-economic damages if the caps result in large numbers of victims of medical malpractice being unable to bring suit because of the unwillingness of lawyers to take their cases.

¶ 32. Thus, I urge the legislature to revisit the question of whether a medical malpractice crisis actually exists in Wisconsin and, if it does exist, to consider whether the current remedy of placing caps on non-economic damages is just.

¶ 33. SCHUDSON, J. (*dissenting*). St. Francis Hospital and its insurer, American Continental Insurance Company, Dr. James Sullivan, Dr. Richard Fitzpatrick, Southeastern Emergency Medical Services, S.C., and their insurer, Physicians Insurance Company of Wisconsin, and the Wisconsin Patients Compensation Fund (collectively, "the Fund") appeal from the circuit court's nonfinal order ·declaring that "the provisions of WIS. STAT.§§ 655.017 and 893.55(4) imposing a $350,000 recovery cap [on noneconomic damages] in medical malpractice cases are unconstitutional."[1] Because the challenged statutes violate the constitutional right to a jury trial, we must affirm.

## I. BACKGROUND

¶ 34. In June 1997, Audrey Guzman received treatment at St. Francis Hospital for a cervical spine fracture. She alleged that due to the negligence of St. Francis and several health care providers in diagnosing and treating her, she had suffered spinal cord

---

[1] The circuit court also declared that "the provisions of Wis. Stat. § 655.015 relating to damages for future medical expenses in excess of $100,000 in medical malpractice cases are constitutional." Guzman does not challenge that portion of the order.

In an order dated May 17, 1999, we granted leave to appeal from the circuit court's nonfinal order because, we concluded, interlocutory review would "clarify further proceedings and, more importantly, clarify an issue of general importance for the administration of justice." The supreme court, after granting a petition to bypass, divided three to three (Justice Prosser not participating) on whether to affirm or reverse the circuit court's nonfinal order. *Guzman v. St. Francis Hosp., Inc.*, 2000 WI 34, ¶ 1, 234 Wis. 2d 170, 609 N.W.2d 166. Consequently, the supreme court vacated its order granting the petition to bypass and remanded the case to this court. *Id.* at ¶ 3.

injuries and become "an incomplete quadriplegic who will spend the rest of her life being unable to work, use her arms completely, or have neurological control or sensation over the majority of her body."

¶ 35. Guzman, her husband and their two children brought the underlying action seeking damages for, among other things, pain, suffering, loss of consortium, and loss of society and companionship. They also asked the circuit court to declare that WIS. STAT. §§ 655.017 and 893.55(4), limiting their potential recovery of noneconomic damages to $350,000, were unconstitutional.[2] The circuit court agreed, concluding that the statutory limit on recovery of noneconomic damages in medical malpractice cases was unconstitutional.

## II.   DISCUSSION

### A.   The Challenged Statutes

¶ 36. The challenged statutes provide for what is commonly called the "cap" on recovery of noneconomic damages in medical malpractice cases. WISCONSIN STAT. § 655.017 (1997–98),[3] in relevant part, provides:

> **Limitation on noneconomic damages.** The amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider if the act or omission occurs on or after May 25, 1995, and for

---

[2] While not conceding liability, the appellants do not dispute that Guzman's noneconomic damages exceed $350,000 and, therefore, that the determination of the constitutionality of the challenged statutes will directly affect the amount of Guzman's potential recovery.

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

acts or omissions of an employe of a health care provider, acting within the scope of his or her employment and providing health care services, for acts or omissions occurring on or after May 25, 1995, is subject to the limits under s. 893.55(4)(d)

. . . .

WISCONSIN STAT. § 893.55(4), in relevant part, provides:

(a) In this subsection, "noneconomic damages" means moneys intended to compensate for pain and suffering; humiliation; embarrassment; worry; mental distress; noneconomic effects of disability including loss of enjoyment of the normal activities, benefits and pleasures of life and loss of mental or physical health, well-being or bodily functions; loss of consortium, society and companionship; or loss of love and affection.

(b) The total noneconomic damages recoverable for bodily injury or death, including any action or proceeding based on contribution or indemnification, may not exceed the limit under par. (d) for each occurrence on or after May 25, 1995, from all health care providers and all employes of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the patients compensation fund.

(c) A court in an action tried without a jury shall make a finding as to noneconomic damages without regard to the limit under par. (d). If noneconomic damages in excess of the limit are found, the court shall make any reduction required under s. 895.045 [relating to contributory negligence] and shall award as noneconomic damages the lesser of the reduced amount or the limit. If an action is before a jury, the jury shall make a finding as to noneconomic damages without regard to the limit under par. (d). If the jury finds that noneconomic damages exceed the limit, the jury

shall make any reduction required under s. 895.045 and the court shall award as noneconomic damages the lesser of the reduced amount or the limit.

(d)   The limit on total noneconomic damages for each occurrence under par. (b) on or after May 25, 1995, shall be $350,000 and shall be adjusted by the director of state courts to reflect changes in the consumer price index for all urban consumers, U.S. city average, as determined by the U.S. department of labor, at least annually thereafter, with the adjusted limit to apply to awards subsequent to such adjustments.

## B.   The Standards of Review

¶ 37.   The interpretation of a statute presents a question of law, which we review *de novo. Burks v. St. Joseph's Hosp.*, 227 Wis. 2d 811, 824, 596 N.W.2d 391 (1999). We generally will not engage in statutory construction unless a statute is ambiguous. *Harris v. Kelley*, 70 Wis. 2d 242, 249, 234 N.W.2d 628 (1975). Here, no party suggests that the challenged statutes are ambiguous.

¶ 38.   The constitutionality of a statute also presents a question of law, which we review *de novo. Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 119, 595 N.W.2d 392 (1999). Statutes are presumed to be constitutional. *Id.* As the supreme court has explained:

One who challenges a statute's constitutionality carries a heavy burden of persuasion. He [or she] must overcome the presumption of constitutionality described in *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973):

". . . It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent

establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts. . . ."

The court cannot reweigh the facts as found by the legislature. If the court can conceive any facts on which the legislation could reasonably be based, it must hold the legislation constitutional.

*State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 506, 261 N.W.2d 434 (1978).

¶ 39. "The presumption of statutory constitutionality is the product of our recognition that the judiciary is not positioned to make the economic, social, and political decisions that fall within the province of the legislature." *Aicher v. Wisconsin Patients Compensation Fund*, 2000 WI 98, ¶ 20, 237 Wis. 2d 99, 613 N.W.2d 849. Still, neither our respect for the legislature nor the presumption of constitutionality allows for absolute judicial acquiescence to the legislature's statutory enactments. Indeed, as the supreme court has emphasized, "Since *Marbury v. Madison*, it has been recognized that it is peculiarly the province of the judiciary to interpret the constitution and say what the law is." *State ex rel. Wisconsin Senate v. Thompson*, 144 Wis. 2d 429, 436, 424 N.W.2d 385 (1988) (citation omit-

ted).[4] Faithful to these standards, we now must determine the constitutionality of the statutory cap on recovery of noneconomic damages in medical malpractice actions, as provided in WIS. STAT. §§ 655.017 and 893.55(4)(a)–(d).[5] Unfortunately, the majority's determination is mistaken.

---

[4] As eloquently expressed by Alexander Hamilton in THE FEDERALIST NO. 78:

> It is not otherwise to be supposed, that the Constitution could intend to enable the representatives of the people to substitute their WILL to that of their constituents. It is far more rational to suppose, that the courts were designed to be an intermediate body between the people and the legislature, in order, among other things, to keep the latter within the limits assigned to their authority. The interpretation of the laws is the proper and peculiar province of the courts. A constitution is, in fact, and must be regarded by the judges, as a fundamental law. It therefore belongs to them to ascertain its meaning, as well as the meaning of any particular act proceeding from the legislative body. If there should happen to be an irreconcilable variance between the two, that which has the superior obligation and validity ought, of course, to be preferred; or, in other words, the Constitution ought to be preferred to the statute, the intention of the people to the intention of their agents.

[5] Although no Wisconsin appellate decision has determined the constitutionality of the cap on recovery of noneconomic damages in medical malpractice cases, several have approached the area.

In *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 261 N.W.2d 434 (1978), certain of the original 1975 enactments of WIS. STAT. ch. 655 survived constitutional challenges. The supreme court, however, in the context of an equal protection challenge, declined to address the constitutionality of the cap then encompassing awards for noneconomic damages in medical malpractice actions because it could not have affected the plaintiffs' recoveries in that case. *See id.* at 511. But, as I shall discuss in this dissenting opinion, the court did address

## C. The Circuit Court Decision

¶ 40.   Granting the Guzmans' motion for declaratory judgment, the circuit court concluded that WIS.

whether certain provisions of ch. 655 violated the right to a jury trial.

In *Rineck v. Johnson*, 155 Wis. 2d 659, 456 N.W.2d 336 (1990), *overruled, in part, on other grounds by Chang v. State Farm Mutual Automobile Insurance Co.*, 182 Wis. 2d 549, 566, 514 N.W.2d 399 (1994), the supreme court concluded that the cap on recovery of noneconomic damages in medical malpractice actions, then $1 million under the 1985 amendments to WIS. STAT. chs. 655 and 893, superseded the lower cap in the wrongful death statute where the death resulted from medical malpractice. *See Rineck*, 155 Wis. 2d at 666–68. The court, however, did not address the constitutionality of the medical malpractice cap.

In *Jelinek v. St. Paul Fire & Casualty Insurance Co.*, 182 Wis. 2d 1, 512 N.W.2d 764 (1994), *superseded by statute as stated in Czapinski v. St. Francis Hospital, Inc.*, 2000 WI 80, 236 Wis. 2d 316, 613 N.W.2d 120, the supreme court held that, after the expiration of the cap contained in the 1985 amendments, recovery of noneconomic damages in medical malpractice actions involving death was unlimited. *See Jelinek*, 182 Wis. 2d at 12. Again, however, the court did not determine the constitutionality of the cap.

In *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995), the supreme court concluded that retroactive application of the cap on recovery of noneconomic damages in medical malpractice cases violated substantive due process and, therefore, that it would be unconstitutional to apply the cap to a cause of action that accrued prior to the cap's effective date. *See id.* at 212. Once again, the court did not determine the constitutionality of the cap.

In *Czapinski*, the supreme court examined WIS. STAT. § 893.55(4)(f), relating to damages for wrongful death resulting from medical malpractice, and held that "§ 893.55(4)(f) makes applicable to medical malpractice death cases only the limit on

STAT. §§ 655.017 and 893.55(4) were unconstitutional because they violated the right to a jury trial guaranteed by art. I, § 5 of the Wisconsin Constitution. The court explained:

> For defendants' argument [that once the jury has ascertained the facts and assessed damages, the jury trial right has been satisfied, notwithstanding the trial court's reduction of the damages award to the statutory limit] to stand, plaintiffs' guaranteed day in court would be merely going through the motions after which the trial court would disregard the jury's assessment of damages.
>
> Moreover, as defendants conceded in oral argument, under their interpretation of the power of the legislature, the cap could be reduced to $10 without violating the right to a jury trial because the legislature has the right to change common law rights. Such power would render the constitutional right to a jury trial illusory.
>
> Constitutional protections such as the right to a jury trial are too important and too ingrained into the fabric of our system of justice to be so easily shredded.

¶ 41.   The circuit court also concluded that the statutes were an unconstitutional "usurpation of the judiciary's exclusive remittitur role in violation of constitutional separation of powers." The court reasoned:

---

damages [under WIS. STAT. § 895.04], and does not incorporate the wrongful death classification of claimants entitled to bring such an action," and that "§ 893.55(4)(f) does not violate the equal protection clause of the Wisconsin Constitution." *Czapinski*, 2000 WI 80 at ¶ 2. The court, however, did not address the constitutional challenges to the statutory subsections presented in this appeal.

Because the legislature mandates that trial courts reduce a jury's noneconomic damage award to $350,000, there is a conflict with the judiciary's exclusive remittitur role in contravention of the Wisconsin separation of powers doctrine.

The doctrine of remittitur of an excessive jury verdict is never compulsory and should only be used upon a clear showing on a case-by-case basis that the evidence of a particular case viewed in the light most favorable to the verdict does not support an award.

This power is, therefore, an essential role exclusively within the judicial province. These provisions invade this role by requiring the reduction without any review of the facts of a particular case.

(Citation omitted.) Although we rewiew the issues in this appeal *de novo*, we should value the circuit court's analysis. *See State v. Hansford*, 219 Wis. 2d 226, 234, 580 N.W.2d 171 (1998).

### D. The Right of Trial by Jury

¶ 42. Article I, § 5 of the Wisconsin Constitution provides, in relevant part, "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy . . . ."

¶ 43. The Fund argues that the circuit court erred in concluding that the challenged statutes violate the Guzmans' right to a jury trial. The Fund asserts that the statutory cap on recovery of noneconomic damages in medical malpractice cases is not only constitutional, but "unremarkable." After all, the Fund contends:

The "cap" now at issue is only a relatively minor modification to a field occupied 25 years ago as a

way of regulating the economics of medical malpractice.

. . . .

Even a cursory review of the Wisconsin Statutes will reveal countless examples of instances in which the Wisconsin Legislature has altered the common law substantially. It has eliminated remedies; it has codified, then modified, a negligent plaintiff's right to recover from negligent defendants, as well as those defendants' rights of contribution *inter se*; it has immunized entire classes of individuals from the proximate consequences of their negligence; it has limited the amount of recovery, regardless of the amount of actual damages incurred [in claims for wrongful death, claims against governmental bodies, and claims against state employees]; it has preempted entire fields formerly governed by common law; and it has abolished common law actions or claims in their entirety.

. . . .

In short, there is nothing unusual about the Legislature's decision to cap liability for noneconomic damages in medical malpractice cases. It is simply one example of the Legislature's continuing attempt to balance competing economic interests in a world of finite resources.

(Footnotes and citations omitted.)

¶ 44. Notably, however, the Fund points to *no* examples of the legislature's curtailment of the right of trial by jury in the arena of medical malpractice cases. *See Aicher*, 2000 WI 98 at ¶ 60 ("[T]he distinct nature of the medical malpractice arena itself sets it apart from other forms of litigation."). I conclude that, under the uncompromising declaration of art. I, § 5 of the Wisconsin Constitution, and under the unyielding words of the Wisconsin Supreme Court, WIS. STAT. §§ 655.017 and

893.55(4) infringe upon and impair the jury's ultimate determination of economic damages and, therefore, violate the right of trial by jury.

¶ 45. "One of the common-law rights recognized by the legislature is the right to bring a medical malpractice claim." *Aicher*, 2000 WI 98 at ¶ 44. "The parties to an action are entitled to a jury trial *on all issues of fact, including that of damages.*" *Jennings v. Safeguard Ins. Co.*, 13 Wis. 2d 427, 431, 109 N.W.2d 90 (1961) (emphasis added). Noneconomic damages often are "hard to measure, and must rest in the discretion of the jury, guided by common sense." *Butts v. Ward*, 227 Wis. 387, 404, 279 N.W. 6 (1938).

¶ 46. Almost a century ago, the supreme court declared, "It would be inconceivable that the people of Wisconsin, in establishing a government to secure the rights of life, liberty, and the pursuit of happiness, should by general grant of legislative power have intended to confer upon that government authority to wholly subvert those primary rights . . . ." *State ex rel. Zillmer v. Kreutzberg*, 114 Wis. 530, 532–33, 90 N.W.2d 1098 (1902). Unquestionably, the right of trial by jury is among those "primary rights." *See* WIS. CONST. art. I, § 5; *see also La Bowe v. Balthazor*, 180 Wis. 419, 423, 193 N.W. 244 (1923) ("The public policy of the state . . . is determined by the constitution so far as jury trials are concerned, and *the legislature is not permitted to circumvent the constitutional provision in order to even secure a better public policy*. That can only be done by constitutional amendment.") (emphasis added). Thus, as the supreme court recently reiterated, "Although the legislature has the authority to alter Wisconsin's common law, it may not do so contrary to the provisions set forth in the Wisconsin Constitution." *Hansford*, 219 Wis. 2d at 235 n.10.

¶ 47. The majority ignores these emphatic declarations. Instead, the majority attempts to recast this case by pursuing a non-issue: whether the legislature has authority to modify the common law. Of course it does. After all, as the majority notes, WIS. CONST. art. XIV, § 13 provides: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature." Majority at ¶ 7. But, as the supreme court has repeatedly and emphatically declared in countless cases including *Zillmer*, *La Bowe*, and *Hansford*, the legislature may not do so in violation of the constitution.

¶ 48. "The right of trial by jury shall remain inviolate . . . ." WIS. CONST. art. I, § 5. "Inviolate" means "[f]ree from violation; not broken, infringed, or impaired." BLACK'S LAW DICTIONARY 832 (7th ed. 1999). Further, the right "shall extend to all cases at law without regard to the amount in controversy." WIS. CONST. art. I, § 5.

¶ 49. Clearly, and beyond all doubt, the cap violates an individual's right to a jury trial by infringing upon and impairing the jury's authority with regard to the amount in controversy. As Guzman argues:

> The legislature has mandated that the circuit court and medical malpractice litigants engage in a charade in which the jurors are given the illusion of decision making. The jury is instructed on the law, renders a verdict based on all of the evidence presented, and, then, after it is discharged, the trial court is required to disregard its verdict if it awards more than $350,000 in noneconomic damages.

Guzman is correct. By mandating a cap on noneconomic damages, without regard to the facts of a case or the findings of a jury, the legislature has infringed upon and impaired the right of trial by jury.

¶ 50. Although, as noted, the supreme court has not directly addressed the issue in this appeal, *see* n.5 above, the court, in *Strykowski*, in the context of challenges to the constitutionality of statutes allegedly affecting the right to a jury trial in medical malpractice cases, commented extensively in ways that clearly counter the majority's conclusion. *See Strykowski*, 81 Wis. 2d at 522–31. In *Strykowski*, the petitioners argued, among other things, that the patients' compensation panel process of the original version of WIS. STAT. ch. 655 violated their right of trial by jury in two respects: first, "that the expense inherent in panel proceedings," required as a prerequisite to a court action, limited "the accessibility of a subsequent trial," and second, "that the admissibility of panel findings undercut[ ] their right to have a jury determine the facts." *See Strykowski*, 81 Wis. 2d at 522–23. Rejecting their argument, the supreme court declared, "The legislature may modify old procedures, or create new ones, *if the substantive right to jury trial is preserved.*" *Id.* at 523 (emphasis added).

¶ 51. The supreme court explained that the patients' compensation panel process consisted of "proceedings *preliminary to trial.*" *See id.* at 524 (emphasis added). Significantly, however, the court rejected the argument that the panel process infringed upon the right of trial by jury for a simple reason: "The medical review panel does not decide the case; *the ultimate arbiter of all questions of fact is the jury.*" *Id.* at 526 (emphasis added). Further, precisely because WIS. STAT. ch. 655 "provide[d] adequate opportunity to chal-

lenge the findings and order of the panel" in a subsequent jury trial at which *the ultimate arbiter of all questions of fact* would be the jury, "there [would] be no constitutional infirmity to contaminate *the exclusive prerogatives of the jury.*" *See id.* at 526–29 (emphasis added).

¶ 52.   In *Strykowski*, the supreme court invoked the words of Justice Brandeis, writing for the United States Supreme Court in *In re Peterson,* 253 U.S. 300, 309–10 (1920):

> ". . . The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained. It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of *the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with.*"

*Strykowski,* 81 Wis. 2d at 529–30 (citations omitted; emphasis added). And later in its opinion, the supreme court again invoked the United States Supreme Court's powerful words, this time from *Meeker v. Lehigh Valley Railroad Co.,* 236 U.S. 412, 430 (1915), in which the Court rejected a constitutional challenge to another alleged denial of the right of trial by jury precisely because the challenged rule " 'cuts off no defense, interposes no obstacle to a full contestation of

all the issues, *and takes no question of fact from either court or jury.'* " *Strykowski,* 81 Wis. 2d at 531 (quoting *Meeker*) (emphasis added).

¶ 53.   Thus, both the Wisconsin Supreme Court and the United States Supreme Court have held true to the authority of the jury as the "ultimate arbiter of all questions of fact," *see id.* at 526, or, at the very least, to the authority of the jury, as reviewed by the trial judge, to make those "ultimate" determinations of all questions of fact, including damages, with respect to the specific facts of each case.[6]

¶ 54.   In this respect, the majority's reliance on comparative negligence law is completely misplaced. When, in a case involving comparative negligence, *the*

---

[6] Therefore, while the Guzmans' arguments, and the circuit court's decision, regarding remittitur and additur are persuasive, we need not address their separate theory that the challenged statutes violate the separation of powers. While one might view the statutes that way, one may more clearly see that, because of the inextricable link between the jury trial and the judicial authority to review the reasonableness of the jury's determination on a case-specific basis, the statutory cap *also* infringes upon the right to a jury trial by restricting remittitur and additur. As the supreme court explained:

> [Parties have the right] to have the amount of the verdict fixed by the jury, but subject always to the control over the amount which the court possessed at the time that the constitution was framed. This exercise by the court of the power to limit the amount of damages that may be assessed by a jury is not an invasion of the constitutional right to trial by jury because that power on the part of the court was a part of the trial by jury which the constitution declared shall remain inviolate. Indeed it may be doubted if trial by jury would have survived the centuries if it had not been subject to such control by the courts.

*Campbell v. Sutliff,* 193 Wis. 370, 378, 214 N.W. 374 (1927), *overruled on other grounds by Powers v. Allstate Ins. Co.,* 10 Wis. 2d 78, 102 N.W.2d 393 (1960).

*jury* has allocated negligence according to the specific facts of the case, the trial court's computation of the award, *consistent with the jury's factual determination*, certainly does not diminish the jury's role as "the ultimate arbiter of all questions of fact." *See Strykowski*, 81 Wis. 2d at 526. And even when, in such a case, a trial court ultimately awards nothing, it does so *consistent with the jury's determination* that one party was more negligent than the other. The cap on noneconomic damages in a medical malpractice case, however, applies without regard to the specific facts found by the jury.

¶ 55.  The Wisconsin Supreme Court, throughout Wisconsin's history, has "rigidly maintain[ed], inviolably, the right of trial by jury." *Finkelston v. Chicago, Milwaukee & St. Paul Ry. Co.*, 94 Wis. 270, 278, 68 N.W. 1005 (1896). Indeed, our supreme court has declared that "[n]o court has stood more steadfastly and consistently for an unimpaired right of jury trial." *Thoe v. Chicago, Milwaukee & St. Paul Ry. Co.*, 181 Wis. 456, 466, 195 N.W. 407 (1923).

¶ 56.  This court must do no less. *See State v. Clark*, 179 Wis. 2d 484, 493, 507 N.W.2d 172 (Ct. App. 1993) (court of appeals bound by supreme court decisions). Article I, § 5 of the Wisconsin Constitution lists no exception to the right of trial by jury for medical malpractice actions; it lists no exception for noneconomic damages. "Rigidly maintain[ing]" the inviolate right of trial by jury, *see Finkelston*, 94 Wis. at 278, I conclude that, unquestionably, the challenged statutes do exactly what art. I, § 5 prohibits: they infringe upon and impair the inviolate right to a jury trial by substituting the legislature for the jury as the

"ultimate arbiter" of noneconomic damages in medical malpractice cases. Accordingly, I respectfully dissent.